### Mirza Myers Murphy, Plaintiff in Error, v. White City Amusement Company, Defendant in Error.

#### Gen. No. 30,853.

EXHIBITIONS AND SHOWS—*sufficiency of evidence to support direction of verdict for defendant in action for injury to amusement park patron.* Where the evidence in an action by a patron of an amusement park, seeking damages for an injury sustained while a passenger in a boat permitted to slide down a plane with an incline of nearly 45 degrees from a height of 55 or 60 feet to a pond at its foot, thereby striking the water with such violence that it bounded upwards several times before settling to a steady course across the pond, showed that the plaintiff, when she embarked upon the ride, was familiar with the device and aware of its dangers, and failed to show any defect in either the construction or the operation of the device, it was not error to direct a verdict for defendant.

Error by plaintiff to the Superior Court of Cook County; the Hon. EMANUEL ELLER, Judge, presiding. Heard in the first division of this court for the first district at the March term, 1926. Affirmed. Opinion filed October 11, 1926.

ROYAL W. IRWIN, for plaintiff in error.

MILLER, GORHAM, WALES & NOXON, for defendant in error; GILBERT NOXON, of counsel.

MR. PRESIDING JUSTICE MCSURELY delivered the opinion of the court.

Murphy v. White City Amusement Co., 242 Ill. App. 56.

Plaintiff was injured while riding on an amusement device known as "The Chutes." She brought suit and upon trial the court instructed the jury to find for the defendant. From the judgment on the verdict plaintiff appeals.

"The Chutes" is an inclined plane rising at an angle of about 45 degrees to a height of about 55 or 60 feet. On the incline are metal rails with water running down between them. Passengers, who have ascended to the top by an escalator, are loaded in boats about 5 feet wide and 15 feet long, which are then started down the incline, descending by gravity at a speed estimated at 35 or 40 miles an hour. An attendant rides in the back. At the bottom of the incline is a lake or pond, and when the descending boat strikes the water the front end bounces up about 9 feet, then it bounces a few more times with diminishing force until it is brought to the landing.

On this particular occasion plaintiff was one of a party of 10 or 11 which visited the amusement park. They bought tickets for the chutes, ascended to the top by the escalator, and entered one of the boats, the plaintiff sitting in the second seat from the front. The boat ran down the incline, and when it struck the water, plaintiff says, it first raised her from her seat and then she sat down heavily, injuring her spine.

Plaintiff testified that she had seen the chutes quite often before, was familiar with them and the manner in which the boats ran down the incline, and knew how they bounced when they struck the water in the pond. She said that when the boat she was in "struck the water, it flew up in the air like all those chutes boats"; that "they all look alike and act alike"; that the reason she took the ride was "to get the thrill going down, * * * but it is not pleasant when you strike the water."

Other witnesses testifying on behalf of the plaintiff said that they were familiar with the manner of

operation and knew that the boats bounced up and down when they struck the water at the bottom of the incline.

Plaintiff's declaration charges: (1) That the boats on the chutes were operated in a manner dangerous to the occupants thereof, in that the boats were permitted to slide down the plane at a high and dangerous rate of speed and to strike the water at the bottom with great force and violence; (2) that defendant negligently caused and permitted said boat to violently jar, lurch, and be thrown into the air; and (3) the operator of the boat did carelessly and negligently cause said boat to be violently thrown into the air. There is no evidence to support the third count nor evidence that the device was defective or operated in an unusual manner.

Can plaintiff maintain an action for an injury received on such a simple amusement device, with which she was familiar, upon the sole ground that it is dangerous? The answer must be in the negative.

While the relation between plaintiff and defendant may have been that of passenger and carrier, yet the relative duties of the parties depend upon the kind of carriage contracted for. Plaintiff knew that she was contracting for a swift ride down a steep incline in a boat which bounced violently when it struck the water at the bottom. Her contract of carriage was subject to the dangers incident to the experience. She testified that she took the ride to receive the thrill caused by such dangers. The factor of danger was one of the things she contracted for.

In *Pointer v. Mountain Ry. Const. Co.*, 269 Mo. 104, where the passenger was injured upon a scenic railway, the court said that he "knew he was making no contract for a Pullman car upon the level tracks of a steam railroad," but contracted for the peculiar carriage offered.

In *Carlin v. Krout,* 142 Md. 140, a passenger was injured while riding on the "Ocean Wave." The evidence showed that the device was in perfect condition and operated according to its design, and it was held that the injuries were not caused by any breach of duty charged against the proprietor with reference to ordinary conditions represented or understood to be safe, "but to those existing in an unusual device which was intended to be used only by persons who desired to assume the risks which its use clearly involved."

In *Sullivan v. Ridgway Const. Co.,* 236 Mass. 75, where an amusement device was operated in its usual manner, it was held that defendant was not liable for injuries received by a patron, and in *Lumsden v. L. A. Thompson Scenic R. Co.,* 130 N. Y. App. Div. 209, where the passenger was injured while riding on a scenic railway, the court in reversing a judgment obtained by plaintiff said: "The plaintiff knew the general nature of the ride that she was about to take. She selected her own seat, and voluntarily placed herself in a position in the car from which she was thrown, and she assumed the risk of being thrown from the car by reason of its usual operation. The car necessarily gave a lurch as it started down the incline. So far as appears, there was nothing unusual or extraordinary about the motion of the car; nor was there the slightest evidence that the car was out of order, or that anything happened upon this trip that was not the usual occurrence made necessary by the motion of the car."

This language is applicable to the instant situation. We are not influenced to the contrary by the decisions in *Carlin v. Smith* (Md.), 130 Atl. 340, or *Stickel v. Riverview Sharpshooters Park Co.,* 250 Ill. 452. In the former case it was held that the injury arose from a defect in the device or in its operation. In the latter case, the "Katzenjammer Castle" was a complicated

affair with only one exit, a chute, down which the protesting plaintiff was forced by an attendant, and certain agencies for the safety of patrons were absent from their customary places. In *O'Callaghan v. Dellwood Park Co.*, 242 Ill. 336, the cars running on a scenic railway for some unexplained reason were suddenly checked, throwing the passenger out.

In the present case the evidence did not tend to show any defect in construction or operation. The device operated as it always had operated and as plaintiff expected it to operate. There was nothing to charge the defendant with actionable liability. The peremptory instruction was correct, and the judgment is affirmed.

*Affirmed.*

MATCHETT and JOHNSTON, JJ., concur.