John E. SCHMIDT, Appellant,

v.

FONTAINE FERRY ENTERPRISES, Incorporated, Appellee.

Court of Appeals of Kentucky.

Nov. 28, 1958.

As Modified on Denial of Rehearing Jan. 30, 1959.

John H. Chandler, James T. Robertson, Louisville, for appellant.

Fielden Woodward, A. Singleton Cagle, Woodward, Hobson & Fulton, Louisville, for appellee.

STEWART, Judge.

In this action plaintiff, John E. Schmidt, sought to recover damages from defendant, Fontaine Ferry Enterprises, Inc., for personal injuries allegedly caused by the latter's negligence in the operation and maintenance of an amusement device known as a sliding board at its place of business, and upon which plaintiff was riding when he injured himself. At the conclusion of plaintiff's evidence the trial judge directed a verdict for defendant on the theory that he took his chance of injury from a known risk, so that defendant was relieved of responsibility. This appeal is from the judgment entered dismissing the complaint. Reversal is urged on the ground that there was sufficient evidence to warrant the submission of the case to the jury. We shall refer herein to the parties as "plaintiff" and "defendant".

The evidence develops these pertinent facts. On August 19, 1949, at or about 8:10 p. m. plaintiff paid admission and entered defendant's building known as "Hilarity Hall" in which is located the sliding board upon which his mishap occurred. The photograph filed as an exhibit with the evidence shows this sliding board to be about three stories high, with two humps or dips spaced at equal intervals and with sides that come up to approximately shoulder height when one is sitting on it. The

device is wooden throughout with no mechanical appliances, and every part of it appears to be in plain sight when one views it from the top.

Plaintiff stated he sat down upon a pad (which is a square of coarse cloth that serves to protect the clothes of one sliding on the board), was given a customary push by the attendant, and started downward. He said he began to go down "like a man that was shot out of a cannon". According to his testimony, when he went over the first hump he felt himself "leave the seat a little bit" and when he reached the second hump he went beyond it "maybe 4, 5, 6, 7, 8 feet from the landing". He testified he lit or fell back on the board "in a laying position" and proceeded down the slide in this fashion.

Plaintiff had been down this slide many times before and on occasions had gone down it with his children, sliding with them between his legs. He gave as the explanation for the accident that the slide was "slick as glass". No medical proof was introduced, but plaintiff's testimony was to the effect that his back was severely injured and as a consequence he was compelled to quit a regular job. It was brought out, however, he had suffered from arthritis in his back since 1947, so that it is a bit difficult to determine the extent this disease has contributed to his disability.

At the time of plaintiff's injury, his wife was standing at the bottom of the slide in order to watch him descend. She testified she "never did see him come as fast as he did". Continuing her testimony, she stated that when he came to the last hump or dip he went up in the air about six or eight feet and then dropped "the whole distance to the bottom of that dip." She said: "What caused him to come as fast, I could not say." She stated plaintiff had used the slide over a period of four or five years, but, until the time he received his injury, "he never had any trouble" on it.

John J. Hager, another witness for plaintiff, had stationed himself at the top of the slide just before plaintiff descended. He testified plaintiff went down fast. Upon plaintiff's reaching the second hump, according to Hager, he "just left the slide and he lit down, I don't know, but I think about two feet from the end, and he hit on his side." When asked to describe the slide Hager stated that "it looked awful slick but it might have been that it was supposed to be that way, I don't know."

Relying upon this evidence, plaintiff insists that the judgment should be reversed because it was shown that the instrumentality (the sliding board) was under the exclusive control of defendant and its servants, and that the accident was such as in the ordinary course of events would not have happened if those who were in control of it had used proper care, with the result that plaintiff met the burden of proving negligence in this action under the doctrine of "res ipsa loquitur".

■ The three conditions necessary for the application of the doctrine of "res ipsa loquitur" are that the accident must be of a kind which ordinarily does not occur in the absence of some one's negligence, it must be caused by an agency or instrumentality within the exclusive control of the defendant, and it must not have been due to any voluntary action or contribution on the part of the plaintiff. Boston & Maine R. R. v. Jesionowski, 1 Cir., 154 F.2d 703, 705.

■ As to the second condition, the instrumentality may be said to have been wholly in the charge of defendant under the facts of this case. When we consider the evidence in connection with the first and third conditions it is our opinion that plaintiffs' proof did not disclose the accident was one that ordinarily would not occur in the absence of negligence upon defendant's part but, on the contrary, did show that the injury sustained by him was due to his voluntary act or was contributed to by a course of conduct of his own choosing. It follows that plaintiff may not invoke res ipsa loquitur upon the basis of the

evidence presented and, furthermore, it appears the trial court correctly ruled plaintiff was solely liable for his own injury when he assumed the risk of sliding down the board.

The defense of assumption of risk, which controls the disposition of this case, rests upon the principle that when the plaintiff enters voluntarily into a relation or situation involving obvious danger, he may be taken to assume the risk and to relieve the defendant of responsibility. See Prosser's Handbook of the Law of Torts (Second Edition), Section 55, page 303. 38 Am.Jur., Negligence, Section 172, page 847, points out that "* * * there is a clear distinction between the defense of assumption of risk and the defense of contributory negligence, notwithstanding they may arise under the same set of facts and may sometimes overlap. * * * The former involves a choice made more or less deliberately and negatives liability without reference to the fact that the plaintiff may have acted with due care, whereas the defense of contributory negligence implies the failure of the plaintiff to exercise due care." See also Poole v. Lutz & Schmidt, 273 Ky. 586, 117 S.W.2d 575.

It seems to us no one could have been more completely acquainted with an appliance than was plaintiff with the slide at the time he last rode down on it and became involved in the mishap. His experience in using it to obtain a thrill covered the length of four or five years. It could be said his knowledge concerning it equalled that of defendant's. Plaintiff's wife stated that the only time she had ever seen him previously come down the slide was with one of the children. Actually, this tends to show that the slide was safe enough for children, if one employed proper caution when on it, and that evidently plaintiff used ordinary care when he had his children with him. Certainly, the fact that he was injured one time on the slide, but had ridden on it many times before without harm, fails to establish that something was wrong with the apparatus, or that defendant was, in any way, negligent.

Plaintiff's contention that defendant was guilty of negligence is solely focused upon the claim that the latter had allowed the slide to become extremely slick. "It was slick as glass", he testified. The slickness of the slide, however, was not a defect in its structure or maintenance, but was an intentional attribute. It may be stated in this connection that the slide was built to be slick, otherwise it would not have served the purpose for which it was constructed, namely, to induce a novel sensation by affording a quick transit down its incline. Furthermore, plaintiff was unquestionably aware of its slickness, since the possession of this quality by the slide was obvious from a mere glance and since the knowledge of such a fact had been gained by much use of it on his part.

In the case of Murphy v. White City Amusement Co., 242 Ill.App. 56, a female patron of an amusement park sustained an injury while a passenger in a boat which was made to slide down a steep incline to a pond at its bottom from a height of about 55 or 60 feet at a speed of 30 to 40 miles an hour. She had previously ridden in the boat. On the occasion of her accident this patron said she was riding in the boat and it struck the water with such impact that "it first raised me from my seat and then I sat down heavily, injuring my spine". Her suit for damages was pitched upon the theory that the amusement park operator of the boat negligently caused it to violently jar, lurch and throw her into the air. In denying her claim the court there said: "Plaintiff knew that she was contracting for a swift ride down a steep incline in a boat which bounced violently when it struck the water at the bottom. Her contract of carriage was subject to the dangers incident to the experience. She testified that she took the ride to receive the thrill caused by such dangers. The factor of danger was one of the things she contracted for."

In the present case plaintiff's evidence did not show any defect in the construction or operation of the slide. The slide was an unusual appliance which was intended to be resorted to by persons who desired to assume the risks which its use clearly involved. A certain feeling of hazard will arise in the minds of those who ride on it, and this is the thing that makes it attractive. To hold defendant liable under the circumstances would in our opinion make it an insurer.

Wherefore, the judgment is affirmed.

MONTGOMERY and EBLEN, JJ., dissenting.

MONTGOMERY, Judge (dissenting).

I disagree with the majority opinion in the application of the doctrine of res ipsa loquitur. The opinion holds that the proof showed that the injury sustained was due to the voluntary act of the appellant or was contributed to by a course of conduct of his own choosing. I take this to mean that the voluntary act or course of conduct was appellant's election to go down the sliding board. Therein lies the fallacy in the application of the principles of res ipsa loquitur.

The injury sustained by appellant was caused by the unusually slick condition of the slide which was unknown to him. This is apparent from the proof in the case which showed that appellant was thrown six or eight feet into the air and dropped several feet toward the bottom of the dip. Rides over the same slide on previous occasions had not resulted in any such action. This result ordinarily would not have occurred except for negligence on the part of someone. The slick condition of the slide was an instrumentality within the exclusive control of the defendant. Once the appellant started the downward course on the slide, he was wholly subject to the action caused by the sliding on the slick surface of the instrumentality. It

was not shown that there was any voluntary action or contribution on the part of appellant after he was once committed to the slide which could or did have anything to do with the resulting injury. Therefore, it is felt that the case should have been submitted to the jury on the evidence submitted in appellant's behalf.

EBLEN, J., joins in this dissent.