## Staunton

### Ernest Eugene Davis v. Elsie Lee Sykes.

September 8, 1961.

Record No. 5269.

Present, Fggleston, C. J., and Spratley, Buchanan, Snead, I'Anson and Carrico, JJ.

The opinion states the case.

*John F. Rixey* (*Rixey & Rixey*, on brief), for the plaintiff in error.

*Herbert K. Bangel* (*Bangel, Bangel & Bangel*, on brief), for the defendant in error.

BUCHANAN, J., delivered the opinion of the court.

The plaintiff, Elsie Lee Sykes, who was a guest passenger in an automobile operated by the defendant, Ernest Eugene Davis, was seriously and permanently injured when the automobile collided with a truck belonging to an oil company and driven by its agent, Patterson. In this action for damages she recovered a verdict and judgment against Davis, to whom we granted this writ of error. He contends that the court erred in refusing two instructions, in admitting certain testimony, and in refusing to ask the jurors about their acquaintance with certain witnesses.

The accident happened about 5:45 a.m., November 21, 1959, on the Churchland Bridge between the town of Hobson and the city of Portsmouth. It was dark but the bridge was well lighted, and both vehicles had their headlights on. The weather was clear, visibility was good, and the roadway was dry with no defects in it. There was a two-lane highway over the bridge, divided by a solid white line. The oil truck had crossed the crest of the bridge and was proceeding down its western slope at a speed of about fifteen miles an hour in its proper lane. Its driver saw the automobile approaching up the bridge five or six hundred feet away, at a speed he estimated at forty to fifty miles an hour, in its proper right-hand lane, when suddenly it came across the white line and into its left-hand lane in front of the approaching truck. The driver of the truck applied his brakes and kept blowing his horn, but the automobile continued on until it crashed head on into the truck which had then either stopped or was barely moving. Both vehicles were then entirely in the northern lane, the truck's proper lane of travel.

The defendant Davis, driver of the automobile, testified that he fell asleep after he entered upon the bridge and never saw the truck until

after the collision. When he last remembered he was about halfway up to the crest of the bridge.

At the time of the collision the plaintiff was asleep on the front seat of the automobile. At about 11:30 p.m. of the night of the accident the defendant came to her home in Portsmouth and invited her to go with him to take two of his friends in his automobile to Hobson, about a twenty-five minute drive away. They arrived there about midnight and he let her out at the home of a friend, telling her he would be back for her in a few minutes. She and her friend talked together until about 1 a.m., when they both went to sleep. The defendant returned about 5 a.m., she got into his car and they started back toward Portsmouth. Fifteen or twenty minutes before the accident the plaintiff fell asleep and the next thing she knew she was in a hospital, where she remained for several weeks. The medical evidence was that her injuries were about as bad as a person could receive and still survive, and it is not claimed that the verdict was excessive.

The defendant contends, first, that the court erred in refusing his Instruction E, which would have told the jury that if they believed from the evidence that there was danger inherent in the trip to Hobson and back to Portsmouth, and that plaintiff knew and appreciated, or should have known and appreciated, this danger, and assumed the risk, they should find for the defendant.

"The defense of assumption of risk, while closely associated with that of contributory negligence, is distinguishable therefrom. As is tersely said in *Hunn* v. *Windsor Hotel Co.*, 119 W. Va. 215, 193 S. E. 57, 58: 'The essence of contributory negligence is carelessness; of assumption of risk, venturousness. * *.'" *Tiller* v. *Norfolk, etc., Ry. Co.*, 190 Va. 605, 612, 58 S. E. 2d 45, 48.

The doctrine of assumption of risk rests on two premises: (1) that the nature and extent of the risk are fully appreciated; and (2) that it is voluntarily incurred. *Hunn* v. *Windsor Hotel Co., supra;* 65 C.J.S., Negligence, § 174; 38 Am. Jur., Negligence, § 173.

The plaintiff testified without contradiction that she had ridden with the defendant before; that he was a careful driver; that when they left Hobson he was driving perfectly, looked and talked all right, did not say he was sleepy and gave her no cause for alarm. The defendant testified that he was not sleepy when they left Hobson and that he had not been sleepy or drowsy before he went to sleep when they were about halfway up the bridge.

We agree with the conclusion of the trial court stated in its written opinion that there was no evidence on which to base an instruction on assumed risk.

The court instructed the jury that as a matter of law the plaintiff was not guilty of contributory negligence, and the defendant does not here complain of that instruction. It was given on the authority of *Newell* v. *Riggins*, 197 Va. 490, 90 S. E. 2d 150. We said in that case, on facts quite like those in the present case, that there was nothing to indicate to the plaintiff or to forewarn her that the defendant was apt to go to sleep while driving his car. "The fact that she was asleep bore no causal relation to the accident." 197 Va. at 493, 90 S. E. 2d at 152.

The evidence which acquits the plaintiff of any contributory negligence in this case also prevents the application of the doctrine of assumed risk.

■ Defendant next complains of the refusal to grant his Instruction D, which would have told the jury that there was no evidence that the defendant was intoxicated at the time of the accident, or that his ability to drive was impaired by the consumption of alcoholic beverages. He says it was offered to offset his testimony that he had drunk three beers at 10:30 that night while at a party. It is true, as defendant points out, that we have held in several cases that the mere odor of alcohol on a person's breath is not sufficient proof of intoxication. *Burks* v. *Webb, Adm'x*, 199 Va. 296, 99 S. E. 2d 629; *Basham* v. *Terry, Adm'x*, 199 Va. 817, 102 S. E. 2d 285; *Laughlin* v. *Rose, Adm'x*, 200 Va. 127, 104 S. E. 2d 782. But these holdings have no bearing on this case. There was no claim in this case that the defendant was intoxicated and there was no reason for instructing the jury on the patent fact that there was no evidence of a non-existent issue. Moreover, the jury had the right to consider whether the defendant's consumption of beer had something to do with his going to sleep. There was no error in refusing this instruction.

■ Defendant further assigns as error that Dr. Eberly, a witness for the plaintiff, who gave the only medical testimony in the case, was allowed to give an estimate of future dental cost. He was a specialist in ear, nose and throat troubles, including treatment of traumatic injuries to the head and neck, such as the plaintiff suffered in this accident. He described the nature and extent of her injuries and the character and duration of the required treatments. In speaking of the fractures of the bones of her face and jaw, and the loss of teeth, he said that the most expensive part of the future treatment would be restoration of her occlusion. He testified to an experience of some eleven years with cases of this character and his familiarity with the average charges of dentists for the treatment of such cases,

derived from his talk with his patients and with the dentists. Over objection by defendant he was allowed to estimate the future dental costs at from five to seven hundred dollars.

On cross-examination he stated that his estimate was based on what his patients, not the dentists, had told him. Plaintiff's counsel then joined in a motion of defendant's counsel to exclude this estimate, and the court thereupon instructed the jury that "the cost of the dental work as included in Dr. Eberly's testimony will be eliminated and disregarded, if you will."

The defendant's counsel offered no criticism of the court's instruction and made no motion with respect to its adequacy or to the propriety of continuing thereafter with the trial. Aside from the question of the admissibility of this testimony, the ruling was as favorable to the defendant as he could reasonably expect and he suffered no prejudicial error.

Defendant's final complaint is on the refusal of the court to inquire of the jury panel on their *voir dire* whether any of them knew or had done business with the plaintiff's employers, Mr. and Mrs. Cecil Jones, who he understood had been summoned as witnesses. They later testified that the plaintiff had been employed by them for several years in general household work and practical nursing in their home and that she bore a good reputation for truth. The defendant argues that he was entitled to know whether any members of the panel knew Mr. and Mrs. Jones, not because that would disqualify them but to aid the defendant in making his peremptory challenges.

The court had already in substance asked the jurors the questions directed by § 8-199 of the Code, and also whether there was any reason why they could not render a fair verdict on the evidence to be introduced. The purpose of the *voir dire* examination is to ascertain whether any juror has any interest in the case, or any bias or prejudice in relation to it, and that he in fact stands "indifferent in the cause." *Rust* v. *Reid*, 124 Va. 1, 16, 97 S. E. 324, 328. Questioning beyond this scope lies within the sound discretion of the trial court. *Temple* v. *Moses*, 175 Va. 320, 336, 8 S. E. 2d 262, 268; 11 Mich. Jur., Jury, § 32. Such discretion is not abused by refusing to ask whether jurors know persons expected to testify merely to aid litigants in making the peremptory challenges allowed by Code § 8-200. *Cf. Melvin* v. *Commonwealth*, 202 Va. 511, 118 S. E. 2d 679.

If conditions exist which may affect the qualifications of a juror, Code § 8-199 permits the objecting party to introduce evidence in support of his objection. Nothing appears in this record to indicate

that there was any acquaintance on the part of any juror with the Joneses that in any way affected his qualifications as a juror, and no prejudice to the defendant appears from the court's refusal to ask the suggested question. *Atlantic & D. Ry. Co.* v. *Reiger*, 95 Va. 418, 422, 28 S. E. 590, 592.

The judgment appealed from is

*Affirmed.*