## Richmond

### W. J. Landes v. Bobbie A. Arehart.

September 1, 1971.

Record No. 7555.

Present, Snead, C.J., I'Anson, Carrico, Gordon, Harrison and Harman, JJ.

*Philip Lee Lotz* (*Lotz and Black*, on brief), for plaintiff in error.

*C. M. Elder* (*Elder & Elder*, on brief), for defendant in error.

Harrison, J., delivered the opinion of the court.

Bobbie A. Arehart recovered a judgment in the court below against W. J. Landes for damages to personal property allegedly caused by the negligence of defendant. Landes made motions to strike at the conclusion of plaintiff's evidence and after all evidence was introduced. He also moved to have the verdict set aside as contrary to the law and the evidence, and for other assigned reasons. The court overruled the motions and entered judgment on the jury's verdict, and to this action we awarded him a writ of error.

On April 15, 1964 Arehart procured the services of Landes to load, haul and deliver a lathe from the Woodrow Wilson Rehabilitation Center, near Fishersville, to plaintiff's place of business in Staunton. Landes operates a wrecker business in Staunton and vicinity.

The lathe, which weighed 8000 lbs. and was 17 feet long, was located in one of the buildings of the Rehabilitation Center. The

wrecker was the conventional type and had an overall width of 8 feet. A discussion occurred about the advisability of hauling the lathe with the wrecker, and there is conflict in the evidence as to what was said by each of the principals.

There was also a question about how the lathe was to be loaded on the wrecker. Landes apparently wanted to set one end of the lathe on the back of the wrecker and pick up the other end with cables. Had this been done it would have been hauled "longways". Arehart disagreed because he was "scared of bending it". The lathe was finally picked up "crossways", and Arehart testified this "was a sensible fashion in which to haul it", although he admitted that the lathe "was too wide for the highway, a good bit too wide". After being loaded it projected 3 to 4 feet on each side of the wrecker.

The wrecker and lathe left the Rehabilitation Center about 3 p. m. with Landes driving. Arehart said he "was riding on the back of the truck [wrecker] not facing the highway at all, looking back watching this piece of equipment". He testified that en route the lathe "scraped the side of the bank several times, and hit a pole". Apparently no damage was then done. The parties were proceeding to Staunton in a westerly direction on Route 250 and had reached a point on the highway where there is a bridge over the C. & O. tracks. Landes testified that he knew that the wrecker and lathe "had to have the best part of the whole bridge to come through" and, not seeing any traffic approaching, he attempted to cross the bridge with the wrecker and pulled over to his left in order to give the lathe clearance on both sides. The evidence is that immediately beyond the west end of the bridge there is a depression or "dip" in the highway and that as Landes started across the bridge a small foreign make car emerged from the dip. He had not observed this car before attempting to cross the bridge. Landes testified he realized that "I had the man's side of the road, and I had to do something to keep from causing an accident or hurting somebody, and I tried to get over and stop and give the man room, but before I could give him room to pass I got the corner of the bridge". This resulted in a wreck and the lathe being severely damaged.

It is unnecessary that we discuss at length the negligence of Landes. Admittedly his wrecker, including the load thereon, exceeded a total outside permissible width of 96 inches, in violation of the provisions of Code § 46.1-328, and he was operating it without having obtained a permit from the State Highway Commission as required by Code § 46.1-343.

U. S. Route 250 is a heavily used two-lane highway, and the portion being traveled by Landes lies between the Cities of Waynesboro and Staunton. So far as the record discloses there were no blinker lights operating on the wrecker, no warning flags attached to its front, rear or sides, and no cars preceding or following to indicate that it was a "wide load". Because of its width the vehicle was occupying its lane of traffic and extending over into the other lane. This necessarily resulted in some maneuvering on the part of the driver of the wrecker every time any vehicle approached or passed. On cross-examination Arehart was asked the question:

"Well with a lathe of this size there was no way to keep from getting over and doing unusual things to avoid traffic was there?"

He responded as follows:

"With the length that we had on this truck this is true. However, I was not driving the truck, it was not my rig, my primary concern was to get the lathe from Woodrow Wilson to Staunton, and I depended solely on Junior Landes to move it for me."

The operation of the vehicle under the facts and circumstances existing here was fraught with danger. A mishap of some kind could and should reasonably have been foreseen and expected to happen by a prudent person.

Arehart and Landes discussed the advisability of moving the lathe with the wrecker, and both realized the dangers and hazards involved. Arehart admits that it was too wide for the highway. The width of the highway and the extent of traffic thereon were considered. Arehart testified that he thought it advisable to haul the lathe on a flatbed truck. Notwithstanding all of this, Arehart knowingly and deliberately permitted his property to be hauled in a dangerous and unlawful manner and accompanied Landes on the trip. He not only consciously endangered his own property but also exposed to danger others lawfully using the highway.

Arehart cannot escape the consequences of his act in knowingly permitting the lathe to be hauled in an unlawful and dangerous manner by showing that Landes was in the wrecker business, was familiar with hauling vehicles and equipment, and was willing to transport the lathe in the manner he did.

"It is now fairly well settled that where one voluntarily assumes the risk of injury from a known danger, he is debarred from a

recovery in negligence cases." *Arrington, Adm'r* v. *Graham, Adm'r*, 203 Va. 310, 314, 124 S. E. 2d 199, 202 (1962).

In *Tomlin* v. *Worley*, 206 Va. 344, 350, 143 S. E. 2d 866, 871 (1965) Mr. Chief Justice Snead quoted from *Arrington, supra* as follows:

> " 'Various statements of the distinction between the doctrines of assumed risk and contributory negligence are found in the cases. Among them are the following: "(A)ssumed risk implies intentional exposure to a known danger, which may or may not be true of contributory negligence; and that assumption of risk embraces a mental state of willingness, while contributory negligence is a matter of conduct." 65 C. J. S., Negligence, § 117, page 711; 38 Am. Jur., Negligence, § 172, page 847.' "

In essence, "[t]he doctrine of assumption of risk rests on two premises: (1) that the nature and extent of the risk are fully appreciated; and (2) that it is voluntarily incurred". *Davis* v. *Sykes*, 202 Va. 952, 954, 121 S. E. 2d 513, 514 (1961).

Under the facts in the instant case the nature and extent of the risk of hauling an 8000-pound, 17-foot lathe crosswise behind an 8-foot wrecker on Highway 250 on the afternoon of a business day was clearly appreciated by Arehart. It is equally as clear that Arehart voluntarily consented that the lathe be hauled in this manner.

In *Hunn* v. *Windsor Hotel Company*, 119 W. Va. 215, 218, 193 S. E. 57, 58 (1937) is found the following:

> " 'Where a person has knowledge of and fully appreciates a danger, and under such circumstances, without any special exigency compelling him, he exposes himself to such danger or peril, his act in the premises may be deemed to have been voluntary. . . . Freedom of the will, in fact, is the thing emphasized by the principle asserted in the maxim *volenti non fit injuria.*' "

Admittedly Arehart made his decision to haul the lathe "without any special exigency compelling him", and after considering the advisability of hauling the lathe on a flatbed truck instead of transporting it suspended behind the wrecker.

We hold as a matter of law that Arehart fully appreciated and voluntarily assumed a known hazard by permitting his property to be hauled at the time and under the circumstances reflected by the evidence and that he is barred from a recovery. In view of this

conclusion, we do not deem it necessary to discuss the other assignments of error.

Accordingly the verdict of the jury is set aside; the judgment appealed from is reversed; and final judgment is here entered for Landes.

*Reversed and final judgment.*