914 F.2d 249
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Jess C. SOUTHERN, Plaintiff-Appellant,
v.
AGRICRAFT COMPANY, INC., Defendant-Appellee.
 No. 89-2437.
 United States Court of Appeals, Fourth Circuit.
 Argued April 3, 1990.
Decided Sept. 17, 1990.
Rehearing Denied Nov. 16, 1990.
 
 Appeal from the United States District Court for the Western District of Virginia, at Roanoke. James C. Turk, Chief District Judge. (CA-83-1125-R)
 John Thomas Jessee, Woods, Rogers & Hazlegrove, Roanoke, Va. (Argued), for Appellant; Frank K. Friedman, E. Dale Burrus, Woods, Rogers & Hazlegrove, Roanoke, Va., on brief.
 Evans B. Jessee, Roanoke, Va., for appellee.
 W.D.Va.
 REVERSED AND REMANDED.
 Before PHILLIPS, Circuit Judge, BUTZNER, Senior Circuit Judge, and MARVIN J. GARBIS, United States District Judge for the District of Maryland, sitting by designation.
 BUTZNER, Senior Circuit Judge:
 
 
 1
 In this diversity action, Jess C. Southern appeals from an order of the district court entering judgment for Agricraft Company, Inc., notwithstanding a verdict in Southern's favor for $200,000. The district court held that two defenses rejected by the jury, "assumption of risk" and "open and obvious danger," defeat Southern's claims. Because we believe neither defense applies and the evidence otherwise supports the verdict, we reverse the judgment and remand for reinstatement of the jury's award.
 
 
 2
 * Southern's employer purchased an Agricraft hoist to move heavy equipment on and off trucks at the employer's Pulaski, Virginia, store. Southern and two coworkers were putting a heavy fertilizer spreader bed on the back of a truck when Southern was injured. The bed rested on cinderblocks. The men used the Agricraft hoist to lift the bed high enough to back a truck beneath it for loading. Because the cinderblocks sat in the path of the truck's tires, it was necessary for Southern to move them. This was a task frequently performed at the store and one always done by hand. Southern reached for the blocks under the suspended bed, but at that moment the hoist failed and the bed crushed Southern's left hand. He lost two fingers in the accident and suffered a nearly total loss of function in the hand.
 
 
 3
 Southern brought suit, charging Agricraft with the negligent design, manufacture, marketing and distribution of the hoist, and with breach of implied warranties of merchantability and fitness for a particular purpose. Southern presented substantial evidence that Agricraft improperly used two u-bolt clamps on the hoist that were inadequate for their purpose, causing the hoist's failure. The jury found for Southern.
 
 
 4
 Agricraft then moved for judgment notwithstanding the verdict, which the district court granted on two grounds. The court did not challenge in its order the finding that the u-bolt clamps rendered the hoist unreasonably dangerous. That finding was a necessary predicate for the breach and negligence claims alike. See, e.g., Logan v. Montgomery Ward Co., 216 Va. 425, 428, 219 S.E.2d 685, 687 (1975). Instead, the court accepted two defenses denied earlier by the jury, concluding first that the doctrine of assumption of risk precluded the negligence claim. The court explained: "[Southern's] own evidence indicated that [Southern] fully appreciated that the raised load was dangerous and might fall and that he nevertheless voluntarily chose to incur the risk of placing his hands under the load."
 
 
 5
 The court also accepted a second defense applicable to the breach of warranty claims, that of open and obvious danger. The order states: "The court finds that the evidence as a whole requires the conclusion that the danger posed by the raised load was known, visible and obvious to [Southern]." Southern assigns error to both rulings.
 
 
 6
 Agricraft had the burden of proving its affirmative defenses of assumption of risk and open and obvious danger. When reviewing an order granting judgment n.o.v. to a party having the burden of proof, the standard to be applied is whether the evidence is "so overwhelming that [the court] cannot uphold the jury's rejection of that defense." Thornhill v. Donnkenny, Inc., 823 F.2d 782, 786 (4th Cir.1987); see generally 9 Wright & Miller, Federal Practice and Procedure Sec. 2535.
 
 II
 
 7
 The two defenses relied on by the district court in its order are similar. Assumption of risk is described under Virginia law as "venturousness and has two requirements: the nature and extent of the risk must be fully appreciated [by the injured party] and the risk must be voluntarily incurred." Amusement Slides Corp. v. Lehmann, 217 Va. 815, 819, 232 S.E.2d 803, 805 (1977); White Consolidated Industry, Inc. v. Swiney, 237 Va. 23, 29-30, 376 S.E.2d 283, 286-87 (1989). "Knowledge of the risk involved is essential to its assumption." Budzinski v. Harris, 213 Va. 107, 110, 189 S.E.2d 372, 375 (1972).
 
 
 8
 "Open and obvious danger" was recognized as a defense to breach of warranty claims in Brockett v. Harrell Bros. Inc., 206 Va. 457, 143 S.E.2d 897 (1965). As explained in a later decision of this court, "If, however, the danger from [a] product is known, visible, or obvious to the plaintiff, there is no liability on an implied warranty of merchantability." Lust v. Clark Equipment Co., 792 F.2d 436, 438 (4th Cir.1986). Brockett indicates that the defense is available for implied warranties of fitness as well. 206 Va. at 463, 143 S.E.2d at 902. A party who uses a product in an obvious, visible, or known defective condition cannot premise a breach of warranty claim on the condition.
 
 
 9
 The district court explained in detail the evidentiary basis for its rulings. The court stated that Southern assumed the risk of his injury because he understood at the time of injury that the raised load was dangerous. His supervisor testified that Southern and others "didn't ... spend a lot of time and play around" under raised loads at work. This was consistent with Southern's admission that he knew putting himself under a suspended load might not be a good idea and that he had read a small warning on the hoist's winch directing those using the hoist to "stand clear" of loads. The court also concluded that because anyone would understand that the suspended spreader bed might fall, its danger must have been clear to Southern.
 
 
 10
 On appeal Southern argues that the district court erred by considering the risk or danger of working around the raised load when it applied the defenses to his claims. He asserts that the court should have focused its attention instead on the risk or danger created by Agricraft's negligent actions. The court should have asked whether Southern assumed the risk arising from the hoist's inadequate clamps and whether the hoist's dangerous condition was clear to him. Southern urges that the evidence supports the jury's decision to reject the defenses when viewed in this light.
 
 
 11
 As Southern argues, the proper inquiry is whether the plaintiff assumed the risk of the unreasonably dangerous conduct of the defendant. In Lehmann, for example, the plaintiff was injured on an amusement park ride. A jury found the ride operator negligent because of inattentiveness and awarded the plaintiff damages for his injuries. When the trial court entered judgment n.o.v., ruling that the plaintiff assumed the risk of the ride, the Virginia Supreme Court reversed:
 
 
 12
 It is true plaintiff assumed the risk of injury resulting from a ride down a steep incline.... But plaintiff did not assume the hazard of injury due to the negligent failure of defendant's employee to spread water on the waxed slide when plaintiff began to accelerate to an excessive and dangerous speed.... [It was] employee inattention which was the risk here involved.
 
 
 13
 217 Va. at 819-20; 232 S.E.2d at 805-06.
 
 
 14
 Similarly, in White, the plaintiffs bought and kept a stove even though it malfunctioned. Faulty wiring was later found to be the culprit and eventually caused the stove to catch fire one day when it was left off. The court found "no merit" in the contention that the plaintiffs assumed the risk created by the faulty wiring because they "could not have appreciated the nature and extent of a risk arising from a loose connection ... which was unknown to anyone until" after the fire. White, 237 Va. at 30, 376 S.E.2d at 286. Although there is less authority on the open and obvious danger defense, the same principle appears to govern it as well. See Lust, 792 F.2d at 438.
 
 
 15
 Southern's general familiarity with the danger of working around a raised object has little bearing on whether either defense applies. It is his awareness of the hoist in its unreasonably dangerous condition that matters. Under this standard, the evidence presented at trial is more than sufficient to support the jury's verdict. Testimony of Southern and his superior reveals that no one working with the hoist had reason to know that its clamps made it unreasonably dangerous. There was nothing in the hoist's appearance or in any information about it at the Pulaski store to put Southern or others on notice. Southern's testimony is illustrative:
 
 
 16
 Q. Was there any discussion between you and [your coworkers] where you all said, "I don't think this is going to work, I think this is dangerous. Let's not use it."
 
 
 17
 A. No, sir. That is what the [hoist] was made for.
 
 
 18
 Q. Did you have any reason to believe that this was going to fail?
 
 
 19
 A. No, sir. If I had known it was, buddy, I wouldn't have been near it.
 
 
 20
 A videotape produced by Agricraft for trial bolsters this conclusion. In the tape, which purports to demonstrate the proper use of the hoist, a worker lifted a load and put his hand under it to remove an object just as Southern did.
 
 III
 
 21
 Agricraft also challenges the jury's finding of negligence. Although the district court did not review this issue, we conclude the evidence adequately supports the verdict. Accordingly, we reverse the district court's judgment and remand the case with directions to enter judgment on the verdict of the jury.
 
 
 22
 REVERSED AND REMANDED.