Present:  All the Justices

LISA S. NELSON
                                              OPINION BY
v.  Record No. 020680        JUSTICE LAWRENCE L. KOONTZ, JR.
                                           January 10, 2003
GREAT EASTERN RESORT MANAGEMENT, INC.
 T/A MASSANUTTEN SKI LODGE, ET AL.

      FROM THE CIRCUIT COURT OF THE CITY OF CHARLOTTESVILLE
                      Edward L. Hogshire, Judge


     In this appeal, the dispositive issue is whether the trial

court erred in instructing the jury in a personal injury case

that the owner/operator of a recreational facility owed no duty

to protect a voluntary participant against the "inherent risks"

of the recreational activity in which the participant was

injured.

                            BACKGROUND

     The parties do not dispute the relevant facts, which will

be recited here in the light most favorable to the party

prevailing in the trial court.  Gardner v. Phipps, 250 Va. 256,

257, 462 S.E.2d 91, 92 (1995).  On January 26, 2000, Lisa S.

Nelson was a business invitee of Great Eastern Resort

Management, Inc., which operates in Virginia under the trade

name of Massanutten Ski Lodge (Massanutten).  As part of the

winter sports and recreational activities provided at the

resort, Massanutten operates a snow tubing park.  Nelson

voluntarily participated in snow tubing on that day.

The slide portion of the snow tubing park consists of nine inclined prefabricated slide lanes separated by raised dividers. When the slide is covered with snow, riders in inflated inner tubes may traverse the slide lanes after reaching the top of the slide by a tow lift. When riders reach the bottom of the slide, they are slowed to a stop in a level area called the "run-off." The height of the lane dividers increases with the amount of snow on the slide and berms of snow can form in the run-off area, thereby extending the lane dividers into that area.

Massanutten employs "loaders," who assist riders in using the tow lift, a "starter," who directs riders to their assigned lanes and gives them a verbal clearance to begin their ride, and a "run-off person," who directs riders to clear the run-off area when their rides are complete. Because the slide has several rises and dips, the starter cannot always see the entire run of the slide or discern whether there are riders still on the slide or in the run-off area, especially when the snow is deep. Accordingly, the starter and the run-off person are in contact by two-way radio, and it is the responsibility of the run-off person to advise the starter when the slide and run-off area are clear of riders. Similarly, the starter is to advise the run-off person if any rider begins his ride early or late.

Massanutten posts warning signs at the entrance to the snow tubing park advising customers that "tubing is inherently risky

2

. . . those risks arise from the following, among others: . . . collisions with objects, tubes, or people."  The warning signs also direct riders to "be sure the lane is clear before starting your descent," and to "clear the lane as soon as your ride is complete."  Similar warnings appear on the ticket admitting customers to the snow tubing park.

After completing a number of snow tubing rides without incident, Nelson was completing a ride at approximately 12:45 p.m. when another rider emerging from the slide into the run-off area struck her.  Nelson suffered serious injuries requiring medical and surgical care.

On September 13, 2000, Nelson filed a motion for judgment against Massanutten seeking $650,000 in compensatory damages.[1] Nelson alleged that her injuries were the result of negligence on the part of Massanutten and its employees.  Although the motion for judgment alleged numerous acts of negligence, the thrust of Nelson's assertions therein was that Massanutten and its employees negligently permitted another rider to commence

---

[1] Nelson also named Great Eastern Resort Corporation as a defendant to her suit.  At trial, Nelson requested a voluntary nonsuit as to Great Eastern Resort Corporation, and the parties agreed that the instructions and verdict form would name only Massanutten as the defendant.  However, the trial court did not formalize the request for the nonsuit in an order.  Accordingly, Great Eastern Resort Corporation, which Nelson asserts is a co-owner of the resort, remains a party to the suit and to this appeal.

the ride in her lane before she had exited it and negligently failed to warn her of the impending collision.

In grounds of defense filed October 5, 2000, Massanutten denied that it had been negligent in the operation of the snow tubing park, in training its employees, or in failing to provide the warnings alluded to in Nelson's motion for judgment. Massanutten further asserted that Nelson had been contributorily negligent, that she had "assumed all the risks incident to her alleged injury," and that "[t]he risks which [Nelson] alleges were the cause of her injury were inherent to the sport of snow tubing."

At a jury trial held on July 9, 2001, evidence in accord with the above-recited facts was received along with evidence relevant to Nelson's alleged damages. In addition to instructions relevant to negligence, contributory negligence, and assumption of risk, the trial court gave the following instruction proffered by Massanutten:

> An operator of a recreational facility has no duty to protect a voluntary participant in a recreational activity against risks that are inherent in the activity itself. Its only duty is to use ordinary care not to increase the risk beyond what is inherent in the activity. A participant in such an activity is deemed to have accepted all risks that would have been clear and obvious to a reasonably careful person under the same or similar circumstances.

At the time the instruction was proffered, Nelson objected that "this is not a statement of Virginia law."  Massanutten, relying primarily on Whitfield v. Cox, 189 Va. 219, 52 S.E.2d 72 (1949), contended that the instruction was consistent with the doctrine of inherent risks which had been recognized in Virginia.  The trial court noted Nelson's objection stating, "I think the evidence can support it and I think it's good law." The jury returned its verdict for Massanutten.

Thereafter, Nelson filed a motion requesting the trial court to set aside the jury's verdict and order a new trial. After hearing oral argument on Nelson's motion, the trial court entered an order denying the motion and awarding final judgment to Massanutten in accord with the jury's verdict.  This appeal followed.

DISCUSSION

It is axiomatic that participation in certain sports or recreational activities necessarily involves the exposure of the participant to the risks of injury inherent in such activities. Snow skiing and snow tubing are but a few examples of such activities.  Indeed, it can be reasonably asserted from common experience that the known and accepted inherent risks of a particular recreational activity provide, in part, the allure and thrill of participation in the activity.  It is in this context that the duty of care owed by the operator of a

5

recreational facility to its invitee and participant in a particular activity is tempered by the common law principle volenti non fit injuria – one who consents cannot be injured.

This notion of consent is embodied in the doctrine of assumption of risk that operates to bar recovery by an injured party where the nature and extent of the risk were fully appreciated and the risk was voluntarily incurred by that party. Landes v. Arehart, 212 Va. 200, 203, 183 S.E.2d 127, 129 (1971). Assumption of risk is an affirmative defense in Virginia. It requires the defendant under a primarily subjective test, rather than the objective reasonable person test applicable to contributory negligence, to show "what the particular plaintiff in fact sees, knows, understands and appreciates." Amusement Slides Corp. v. Lehmann, 217 Va. 815, 818-19, 232 S.E.2d 803, 805 (1977) (citation omitted). However, while the degree or scope of the injured participant's consent is frequently an issue, the operator of a recreational facility is not an insurer of the safety of its invitees. Whitfield, 189 Va. at 223, 52 S.E.2d at 73.

Massanutten acknowledges on appeal that the doctrine of inherent risks, sometimes referred to as "primary" or "implied" assumption of risk, has not been adopted by this Court as part of the common law of Virginia. See Hoar v. Great Eastern Resort Management, 256 Va. 374, 389, 506 S.E.2d 777, 786 (1998).

6

Nonetheless, Massanutten contends that this doctrine is in accord with sound public policy to facilitate free and active participation in sporting and recreational activities and urges its adoption by this Court at this time.

For a statement or explanation of the doctrine of inherent risks, Massanutten cites Turcotte v. Fell, 502 N.E.2d 964 (N.Y. 1986), a case in which a participant in a professional horse race was injured by the alleged negligence of another participant and the operator of the racing track.  In Turcotte, after noting that "the analysis of care owed [the] plaintiff in the professional sporting event . . . by the proprietor of the facility in which it takes place must be evaluated by considering the risks plaintiff assumed," the Court stated that:

The risk assumed . . . means that the plaintiff, in advance, has given his consent to relieve the defendant of an obligation of conduct toward him, and to take his chances of injury from a known risk arising from what the defendant is to do or leave undone.  The situation is then the same as where the plaintiff consents to the infliction of what would otherwise be an intentional tort, except that the consent is to run the risk of unintended injury.  The result is that the defendant is relieved of legal duty to the plaintiff; and being under no duty, he cannot be charged with negligence.

Id. at 967-68 (internal quotation marks and ellipses omitted).

The Court of Appeals of New York further explained that in the context of sporting events the "[d]efendant's duty . . . is a duty to exercise care to make the conditions as safe as they appear to be.  If the risks of the activity are fully

7

comprehended or perfectly obvious, plaintiff has consented to them and the defendant has performed its duty." Id. at 968.

For purposes of our resolution of the present case, we need not conduct a survey of the law of all our sister states on the issue presented. We will accept Massanutten's assertion that the doctrine of inherent risks, as briefly described above, is accepted in a number of those states. We note, however, that unlike the situation in this Commonwealth, the enactment of a comparative negligence statute in New York has prompted the courts there to conclude that, while assumption of risk is no longer an absolute defense, "it still helps and serves to define the standard of care under which a defendant's duty is defined and circumscribed." Morgan v. State, 685 N.E.2d 202, 208 (N.Y. 1997). Similarly, we need not analyze the instruction at issue here to determine whether it comports in all respects with an accurate definition and proper application of the doctrine of inherent risks. The parties do not raise that issue.

Beyond question, the jury in this case was presented with evidence sufficient to establish a prima facie case that Nelson as a business invitee was owed a duty of reasonable care under the circumstances by Massanutten, that Massanutten negligently breached that duty by permitting another rider to commence the ride before she exited it, negligently failed to warn her of the impending collision, and that her injuries were proximately

8

caused by that negligent conduct.  See, e.g., Amos v. NationsBank, N.A., 256 Va. 344, 346, 504 S.E.2d 365, 366 (1998); Fobbs v. Webb Building Limited Partnership, 232 Va. 227, 229, 349 S.E.2d 355, 357 (1986); Wynne v. Spainhour, 215 Va. 16, 17, 205 S.E.2d 634, 635 (1974).  The jury was properly instructed on the defenses of contributory negligence and assumption of risk, which were available to and asserted by Massanutten.  In short, the case was not an unusual one and presented jury issues readily determined under the traditional principles of law that have long been established in the common law of this Commonwealth.

The issue of assumption of risk was patent from the factual circumstances established by the evidence.  Clearly, Nelson "assumed the risk of injury resulting from a ride down a steep incline."  Amusement Slides, 217 Va. at 819, 232 S.E.2d at 805. Nelson, however, was not injured as a result of the speed of her ride; she was injured by a collision with another rider.  Thus, the issue for the jury to determine was whether Nelson subjectively assumed the risk of injury in that manner. Massanutten's instruction, however, permitted the jury to resolve the issue under directions that Nelson was "deemed to have accepted all risks that would have been clear and obvious to a reasonably careful person under the same or similar circumstances."  This objective standard, apparently applicable

9

under the doctrine of inherent risks as adopted in other states, is inconsistent with the traditional standard applicable in Virginia where a primarily subjective test is applied to determine the applicability of the absolute defense of assumption of risk.  See Thurmond v. Prince William Professional Baseball Club, Inc., 265 Va. ___, ___, ___ S.E.2d ___, ___ (2003) (this day decided) (subjective standard used in application of the defense of assumption of risk where plaintiff injured by a batted "foul" ball).  We continue to be of opinion that fairness militates in favor of the traditional standard because it clearly places the burden of proof upon the party asserting consent and because of the absolute defense that consent affords.

In addition, and more importantly, Massanutten's instruction told the jury that Massanutten's only duty of care with regard to Nelson's use of the slide was "to use ordinary care not to increase the risk beyond what [was] inherent in the activity" without a further instruction of what risks were to be considered inherent.[2]  Thus, the jury could have determined that it was required to find in favor of Massanutten under this instruction even though it also found that Massanutten

---

[2] The trial court refused an instruction proffered by Nelson that would have told the jury that "[i]f a hazard can be eliminated or mitigated by reasonable care, it is not an inherent risk of snow tubing."

negligently permitted another rider to use Nelson's lane on the slide before she exited from it and that Nelson had not assumed that risk. In this context, Massanutten's instruction was at best confusing.

Finally, we are not persuaded that the adoption by this Court of the doctrine of inherent risks would promote the public policy of free and active participation in sporting and recreational activities. Rather, we are of opinion that the well established common law in this Commonwealth adequately resolves claims that arise from injuries sustained in these activities and that our adherence to that law will avoid unnecessary confusion and is consistent with the public policy Massanutten favors. Accordingly, we reject Massanutten's request that we adopt the doctrine of inherent risks as a part of the common law of this Commonwealth.[3]

We hold that the trial court erred in granting Massanutten's instruction on the doctrine of inherent risks. "If an issue is erroneously submitted to a jury, we presume that the jury decided the case upon that issue." Clohessy v. Weiler, 250 Va. 249, 254, 462 S.E.2d 94, 97 (1995). Accordingly, we

---

[3] Our decision not to adopt the doctrine of inherent risk is in accord with the action of the General Laws Committee of the House of Delegates, which considered proposed legislation, the "Skiing Responsibility Act," that, in part, would have applied the doctrine of inherent risks to participants in winter skiing.

11

cannot say that the trial court's error in instructing the jury on the doctrine of inherent risks was harmless, and we will reverse the judgment in favor of Massanutten.[4]

CONCLUSION

For these reasons, the judgment of the trial court will be reversed and the case remanded for a new trial.

<u>Reversed and remanded</u>.

---

See House Bill No. 803 (1988)(continued on the docket to 1989 and then stricken in committee).

[4] Having concluded that the instruction on the doctrine of inherent risks was not a correct statement of the law of Virginia and constituted reversible error, we need not consider Nelson's further assignments of error.