**Thomas CHAMBERS, Appellant,**

v.

**COMMONWEALTH of Kentucky, ex rel. Paul H. TWEHUES, Jr., Campbell County Attorney; Glenn Realty Company and Edward Benton, Appellees.**

**Thomas R. CHAMBERS and Tom Chambers, Inc., Appellants,**

v.

**COMMONWEALTH of Kentucky, ex rel. Paul H. TWEHUES, Jr., Campbell County Attorney; and Charles A. Chapman, Appellees.**

Court of Appeals of Kentucky.

Oct. 24, 1986.

Discretionary Review Denied by Supreme Court March 3, 1987.

Mott V. Plummer, Newport, for appellants.

Justin D. Verst, Newport, Robert J.W. Howell, Covington, Donald E. Schneider, Cincinnati, Ohio, Paul H. Twehues, Jr., Campbell Co. Atty., Newport, David L. Armstrong, Atty. Gen., Frankfort, for appellees.

Before COMBS, McDONALD and WILHOIT, JJ.

McDONALD, Judge:

In these cases the appellants, Thomas Chambers and Thomas Chambers, Inc., and the appellee, Glenn Realty Company, challenge the constitutionality of KRS Chapter 233 entitled "Abatement of Houses of Prostitution." This chapter provides that the state "may maintain an action in equity ... to perpetually enjoin" a house of prostitution. KRS 233.030. A house of prostitution is defined as "any building, erection or other place used for the purpose of lewdness, assignation or prostitution." KRS 233.010. Chambers owns and/or manages at least four clubs in the Newport area descriptively named The Body Shop, The Kit-Kat Club, The Mousetrap, and Dillinger's Lounge. Glenn Realty owns an equitable interest in The Mousetrap. The Mousetrap and Dillinger's Lounge have been closed for a period of one year by the judgments of the Campbell Circuit Court in these appeals. The court also ordered the removal and sale of all fixtures, furniture and other property at The Mousetrap.

The appellants and the appellee, Glenn Realty, argue that the terms "lewdness," "assignation," and "prostitution," words not defined in KRS 233.010 et seq., are too vague to be constitutionally acceptable. The Commonwealth concedes that "lewdness" and "assignation" may be vague terms but argues, and we agree, that those

concepts are not involved in these appeals. Thus we are only faced with the issue of whether the term "prostitution" is one of sufficient certainty to withstand constitutional attack.

As an introduction Chambers and Glenn Realty characterize the judgments as a "victory for Puritanism." This is an argument we believe more appropriate for the floor of our General Assembly. It is their basic position that the activity shown by the proof,[1] that is, not sexual intercourse, was not conduct which the common person would consider to be prostitution. Thus they reason that the judgments based on such activity violated their substantive due process rights. They strenuously assert that the definition of prostitution in our current penal code, a definition which encompasses any act of sexual gratification for hire, (*see* KRS 529.020(1) and KRS 529.010) cannot be "hot wired" onto the abatement statute which was originally enacted in 1918 and re-enacted in our Kentucky Revised Statutes in 1942. What the legislature considered to be prostitution when passing the nuisance statute, they contend, cannot be gleaned from what the 1974 General Assembly defined as prostitution in enacting the penal code. They rely on portions of KRS 446.130 which provide that "all sections of the Kentucky Revised Statutes of 1942 shall be considered to speak as of the same date...." They further reason that if the legislature intended for the abatement statute to "swallow up all future legislation it would have said so."

■ Of course, the legislature is aware of well settled judicial rules of statutory construction. Two such rules are that any doubts concerning the constitutionality of legislation must be resolved in favor of constitutionality, *see Hallahan v. Mittlebeeler*, Ky., 373 S.W.2d 726 (1964), and that we must construe our statutes "so as to harmonize and give effect to provisions of each." *Economy Optical Co. v. Kentucky Board of Opt. Exam*, Ky., 310 S.W.2d 783, 784 (1958). Further, and more to the point,

statutes that condemn the same act must be considered *in pari materia.* N. Singer, *Sutherland Stat. Const.* § 51.03 (4th ed., 1984). The abatement statute not only "condemns" prostitution but is designed to supplement the criminal law which alone is apparently ineffective in ridding the community of commercialized sexual activity, conduct which our former Court of Appeals described as "this moral pestilence." *See King v. Commonwealth*, 194 Ky. 143, 238 S.W. 373, 377 (1922). Therefore, even though "prostitution" is not defined in KRS 233, we believe the definition in the penal code to be appropriately relied upon by the trial court in characterizing the conduct at the establishments as prostitution.

■ Regardless of the definition of prostitution elsewhere in our statutes, however, we do not believe the term "prostitution" is vague. The appellant finds support contrary to this position in the case of *State Ex Rel. Clemens v. Toneca, Inc.*, 265 N.W.2d 909 (Iowa, 1978), in which the state invoked a nuisance statute nearly identical to our own in an effort to close a massage parlor. In holding that masturbation of the patrons by a masseuse was not "prostitution" encompassed within their statute, the Iowa Supreme Court reasoned as follows: "Courts are not free to pick undefined words from statutes and define them in a way to reach conduct which they disapprove." *Id.* p. 914.

We certainly are in agreement with this principle. Nevertheless, guided by the two paramount rules of statutory construction, that is, that words must be afforded their plain, commonly accepted meaning and that statutes must be construed in such a way as to carry out the intent of the legislature, *Fitzpatrick v. Crestfield Farm, Inc.*, Ky. App., 582 S.W.2d 44 (1978), it is our opinion that the narrow interpretation urged by the appellants and endorsed in *Toneca* would result in an absurdity. "Prostitution" is not a technical word. It has meant, for centuries, the commercial gratification of sexual desires. The word has never re-

---

**1.** The activity involved the manual stimulation of male patrons by female waitresses in ex-

change for the purchase of drinks which cost from $16 to $55 each.

ferred exclusively to conventional sexual intercourse but to sexual acts of every sort. To hold that our legislature intended to prohibit houses where only conventional sexual intercourse took place seriously underestimates our lawmakers' knowledge of human nature as well as the various activities that take place in such establishments.

We further find no support for appellants' position in the recent case of *Musselman v. Commonwealth*, Ky., 705 S.W.2d 476 (1986). In that case our Supreme Court, in holding our harassment statute was unconstitutional, reasoned that a court cannot add "an additional concept not present in the statute as written by the legislature" in order to "render it constitutional." *Id.* p. 478. As stated, we need not add any concepts to KRS chapter 233 to preserve its constitutional integrity nor reach conduct not prohibited by the plain meaning of its words.

 Chambers argues that even if the conduct at his night clubs is prostitution, it is an unreasonable extension of the police power to close the premises for all purposes for one year and to confiscate the fixtures therein. This, of course, is provided for in KRS 233.100. Appellants argue that the General Assembly intended to eliminate bordellos and not legitimate businesses where occasional illegal activity occurs. The Commonwealth, on the other hand, insists that The Mousetrap and Dillinger's were indeed "bona fide bordellos." We believe this issue was resolved by *Slone v. Commonwealth ex rel. Justice*, 225 Ky. 218, 7 S.W.2d 1037 (1928), which upheld the closing of a hotel pursuant to the abatement statute. It is not the characterization of the business that triggers the remedies provided to the state by the statute but the existence of the particular nuisance.

Finally, we have reviewed the evidence of record in order to consider Chambers' allegation that the courts' findings are clearly erroneous. In the record concerning The Mousetrap there is overwhelming evidence of prostitution and the judgment will not be disturbed. The findings of the court in the action to enjoin prostitution at Dillinger's are also supported by the record. We would be inclined to hold that the court erred as a matter of law in determining Dillinger's to be a public nuisance with only the evidence of the one prostitution-related activity during Chambers' entire tenure at Dillinger's, that is, from November, 1981, until the petition was filed in May, 1985. However, as the court in that case did not order the seizure of the fixtures or other personalty, and as the period for which the club was ordered to be closed has now expired, we will not reach this issue as we believe it to be moot.

The judgment of the Campbell Circuit Court concerning The Mousetrap is affirmed. The appeal from the judgment of the Campbell Circuit Court which orders the closure of Dillinger's is hereby DISMISSED as MOOT.

All concur.