**Ralph McLAIN, Appellant,**

v.

**DANA CORPORATION; Bay Design, Inc.; The Paslin Company; and I.S.I. Industries, Appellees.**

No. 1998–CA–002831–MR.

Court of Appeals of Kentucky.

Oct. 15, 1999.

Discretionary Review Denied by Supreme Court May 10, 2000.

John W. Bland, Jr., Elizabethtown, for Appellant.

Steven D. Goodrum, Lexington, for Appellee, Dana Corporation.

David J. Kellerman, Louisville, for Appellee, The Paslin Company.

O. Lee Cave, III, Debbie D. Sandler, Louisville, for Appellee, Bay Design, Inc.

Before: JOHNSON, McANULTY, and MILLER, Judges.

## OPINION

JOHNSON, Judge:

Ralph McLain's tort claim against his employer, Dana Corporation, and his products liability claims against Bay Design, Inc. and The Paslin Company were summarily dismissed by the Hardin Circuit Court. Since all of McLain's arguments concerning the constitutionality of the workers' compensation laws have either already been rejected by the Supreme Court of Kentucky or are not ripe for our review, and since his products liability claims were not timely filed, we affirm.

On January 3, 1997, McLain was injured at work when he was hit in the head by a piece of machinery that allegedly malfunctioned. McLain, who was employed by the appellee, Dana Corporation, applied for and obtained workers' compensation benefits.[1] McLain also filed a lawsuit in the Hardin Circuit Court in which he named as defendants, Dana Corporation and the appellee, I.S.I. Industries, the alleged manufacturer of the defective equipment.

With respect to his employer, McLain alleged that Dana Corporation "negligently operated, maintained and controlled [its] business by failing to provide [him] with a safe place to work and with safe equipment to operate." The remainder of his complaint alleged that Chapter 342 of the Kentucky Revised Statutes, "as rewritten in 1996," violated several sections of the Kentucky Constitution; that the "'new' workers' compensation law [KRS 342] no longer provides adequate, sufficient, equitable and/or fair benefits" to workers so as to be a "valid alternative to [his] rights [ ] under traditional tort law and under the Constitution of Kentucky"; and, that the manner in which benefits are currently calculated is "arbitrary, unjust, against public policy, vague, inconsistent with the traditional policy objectives of compensating injured workers, unconstitutional, illegal, immoral and a total sham."

In its answer, Dana Corporation claimed that McLain had failed to exhaust his administrative remedies; that McLain's claim against it was barred by the exclusive remedy provisions of the workers' compensation scheme; and that McLain's injuries were caused by his "own negligence" or by "the breach of warranty or other contract or duty of defendant ISI [sic] Industries or some other manufacturer of the product in question...." Dana Corporation also filed a cross-claim against I.S.I. to recover payments made to, or on behalf of, McLain within the context of McLain's workers' compensation claim.

With respect to I.S.I., McLain alleged in his complaint that the manufacturer "negligently designed, manufactured, assembled, tested, inspected, warranted, instructed ultimate users, warned of dangers, repaired and provided a piece of equipment located at the Dana Corporation." McLain further alleged that I.S.I. breached its warranties "both express and implied" and, that I.S.I. was strictly liable to him for selling a machine which "was in a defective condition and which was dangerous and defective" and "unreasonably dangerous to the user."

I.S.I. denied these allegations and claimed that McLain's own negligence was the "cause of his alleged injuries" and that the machine "was not in its original, unaltered and unmodified condition at the time of the subject accident."

1. There is no question that Dana Corporation's insurer paid McLain temporary total disability income benefits as well as his medical expenses. The record does not reveal the amount, if any, of permanent disability income benefits awarded.

On April 20, 1998, Dana Corporation moved for a partial summary judgment and sought a dismissal of that portion of McLain's tort action that alleged it was negligent in failing to provide him with a safe place to work. It argued that regardless of the constitutionality of the 1996 amendments to KRS Chapter 342, McLain's tort claim was barred by the exclusivity provisions contained in KRS 342.690(1), a statute not among those changed by the Legislature in 1996.[2] The trial court agreed with the employer and summarily dismissed McLain's negligence claim against Dana Corporation on October 20, 1998.

Meanwhile, McLain learned through the discovery process that I.S.I. had not manufactured the machine that caused his head injury, but merely had made one of its components. On May 18, 1998, McLain filed an amended complaint to add as defendants the entities which designed, manufactured, and installed the machine at Dana Corporation, the appellees, Bay Design and Paslin. McLain made the same allegations against these defendants that he had previously asserted solely against I.S.I. Both new defendants moved for summary judgment on the grounds that McLain's claims of negligence and strict liability were barred by the one-year statute of limitations, KRS 413.140(1)(a),[3] and that his breach of warranty claim was barred by lack of privity.

McLain responded to these motions by arguing that he filed his amended complaint as soon as he discovered the actual designers and manufacturers of the alleged defective machine. He contended that as to his negligence and strict liability claims he should be given the benefit of the "discovery rule" as defined in *Louisville Trust Co. v. Johns–Manville Products Corp.*, Ky., 580 S.W.2d 497 (1979). He contended that his breach of warranty claim was timely filed because of the four-year statute of limitations provided in KRS 355.2–725. He claimed he should come within the coverage of the language of KRS 355.2–318 for breach of warranty "to the buyer of the defective product and to any natural person who is in the family or household of the buyer or who is a guest in his home." McLain argued that to give the statute the interpretation urged by Bay Design and Paslin would result in the statute becoming "meaningless" when the injured party is an employee of a corporation/buyer of the defective product.

On October 20, 1998, the trial court granted Bay Design's and Paslin's motions for summary judgment. The order dismissing McLain's complaint against these defendants, as well as the summary judgment in favor of Dana Corporation, included finality language which allowed McLain to proceed with this appeal.

## I. CONSTITUTIONALITY OF THE WORKERS' COMPENSATION ACT

McLain advances several arguments in support of his contention that the Workers' Compensation Act is unconstitutional. He argues that the Act impairs an employee's jural rights to recover against his employer for his injury or death and claims support from the recent Supreme Court case of *Williams v. Wilson*, Ky., 972 S.W.2d 260 (1998). However, as the Dana Corporation correctly asserts, McLain's constitutional attack on the Workers' Compensation Act is not new. Certainly, if the Act were mandatory, the jural rights doc-

---

**2.** The exclusivity statute provides, in part, as follows:

> If an employer secures payment of compensation as required by this chapter, the liability of such employer under this chapter shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and any-

one otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death.

**3.** Since it was undisputed that each defendant did not have any knowledge of McLain's lawsuit prior to its receipt of a summons, the relation back rule did not apply. Kentucky Rules of Civil Procedure (CR) 15.03

trine would be implicated, as was reflected in our highest Court's review of the original act passed in 1914.[4] We recognize that "[t]he right of every individual in society to access a system of justice to redress wrongs is basic and fundamental to our common law heritage, protected by Sections 14, 54, and 241 of our Kentucky Constitution."[5] However, when the Legislature re-enacted the Worker's Compensation Act in 1916, it provided that coverage under the Act is not compulsory, but rather allows a worker to reject participation in the no-fault scheme and to maintain his right to seek common law remedies. Since this 1916 enactment, our courts have consistently held the Workers' Compensation Act to be constitutional.[6] This Court is, of course, bound by this precedent.[7] Furthermore, there is nothing in the Supreme Court's discussion of jural rights in *Williams v. Wilson, supra,* a case which held that KRS 411.184(1) offended the constitutional right to seek punitive damages, that implicates the viability of the Workers' Compensation Act, or that would justify this Court's failure to follow the settled precedent concerning the Act's constitutionality.

■ McLain also specifically challenges the constitutionality of KRS 342.395(1), the "opt-out" provision of the Act, which provides, in part, as follows:

Where an employer is subject to this chapter, then every employee of that employer, as a part of his contract of hiring ... shall be deemed to have accepted all the provisions of this chapter and shall be bound thereby unless he shall have filed, prior to the injury or incurrence of occupational disease, writ-

ten notice to the contrary with the employer; and the acceptance shall include all of the provisions of this chapter with respect to traumatic personal injury, silicosis, and any other occupational disease. However, before an employee's written notice of rejection shall be considered effective, the employer shall file the employee's notice of rejection with the Department of Workers' Claims.

In his brief, McLain claims that he did not know that he could reject coverage under the Act. He argues that since the statute provides for a worker's implied consent to the statutory scheme, the election was not, in fact, voluntary.

Dana Corporation claims that by accepting temporary total disability income benefits and medical benefits totaling nearly $60,000, McLain has "waived any constitutional challenge" in this regard. It also points to cases upholding the implied consent aspects of the Act, particularly *Wells v. Jefferson County, supra,* n. 6, in which Kentucky's highest Court unanimously endorsed the Legislature's 1952 amendment to provide for implied consent to inclusion in the scheme:

[T]he opportunity of the employe to reject the Act by affirmative action on his part assures him adequate freedom of choice as to whether he will accept or reject the Act.

In those states in which compulsory workmen's compensation laws are not permissible under the state constitution, it has been held almost uniformly that a requirement that the employe act affirmatively in order to reject the law does not make the law compulsory in nature.[8]

4. See *Kentucky State Journal Co. v. Workmen's Compensation Board,* 161 Ky. 562, 170 S.W. 1166 (1914).

5. *O'Bryan v. Hedgespeth,* Ky., 892 S.W.2d 571, 578 (1995).

6. See *Greene v. Caldwell,* 170 Ky. 571, 186 S.W. 648 (1916); *Wells v. Jefferson County,* Ky., 255 S.W.2d 462 (1953); *M.J. Daly Co. v.*

*Varney,* Ky., 695 S.W.2d 400 (1985), overruled on other grounds by *U.S. Fidelity & Guaranty Co. v. Technical Minerals, Inc.,* Ky., 934 S.W.2d 266, 269 (1996); and *Edwards v. Louisville Ladder,* Ky.App., 957 S.W.2d 290 (1997).

7. Rules of the Supreme Court 1.030(8)(a).

8. *Id.,* 255 S.W.2d at 463.

Again, it is clear that this specific provision has already been held to be constitutional.[9] We also note that the principle of implied consent is used in another no-fault scheme, specifically the Motor Vehicle Reparations Act, KRS 304.39 *et seq.*, legislation which survived a similar constitutional challenge:

At the outset, the implied-consent theory must be recognized for what it is. As in the instance of contracts implied in law *vis-a-vis* contracts implied in fact, it necessarily stands on fiction rather than fact. But it is not thereby degraded or denigrated, because the venerated fictions of the law have been deliberately created to achieve what is right. The law simply declares that as done which ought to have been done. If implied-consent laws (or, for that matter, any other laws) had to depend on actual notice they could not exist. It seems to us, therefore, that the proper test of such a law is whether under all the circumstances, considering the public purpose sought to be accomplished and the nature and extent of detriment to the individual, it is reasonable for it to presume a consent where none exists in fact.[10]

With these authorities as precedent, only our Supreme Court has the power to declare the implied consent provision of the Workers' Compensation Act unconstitutional.

 McLain's arguments that the 1996 amendments to the Act are unconstitutional must fail as well, since they are not ripe for review. It is McLain's assertion that he no longer has a "remedy" under the Act as amended in 1996, as any amount he will recover in that forum will be "incomplete, inequitable, unjust, unfair, [which] in no way, shape, form or fashion compensates or redresses his loss to his person." He further insists that the 1996 version of the Act "is a sham and a fraud," and that the amendments have emasculated the scheme designed to compensate a worker for his lost earning capacity and replaced it with one that is " 'arbitrary' " and which "has absolutely no basis or connection with reality."[11] He notes that the AMA guidelines for determining impairment specifically state that they "should not be used to make direct financial awards." Essentially, McLain's argument is that KRS Chapter 342 "is void and illegal because it no longer provides a fair, equitable, complete, whole alternative remedy to injured workers/servants." However, before McLain would be entitled to appellate review of these issues, he must have first exhausted his remedies through the administrative process.[12] Furthermore, the issue of the constitutionality of the 1996 amendments is not germane to the issue of whether the trial court erred in dismissing McLain's tort claim against his employer. Even if a court were to determine that all of the 1996 amendments were unconstitutional, we would still be required to affirm the summary judgment since McLain's tort action would then be governed by the statutes in effect at the time of the amendment.[13] Since the exclusive remedy provision of the Act, KRS 342.690(1), was in effect prior to the 1996 amendments, a judicial voidance of the

**9.** *See also Tri–Gem Coal Co. v. Whitaker*, Ky. App., 661 S.W.2d 785 (1983).

**10.** *Fann v. McGuffey*, Ky., 534 S.W.2d 770, 776 (1975).

**11.** Specifically, McLain earned in excess of $36,000 per year, and claims to be totally disabled as a result of his injury at Dana Corporation. Based on a life expectancy of 33.7 years, McLain claims a loss of over $1.2 million in lost wages alone. McLain does not state what he could recover in workers' compensation benefits. However, Dana Corporation claims that based on the 50% functional impairment rating that McLain received from one physician, he could receive a permanent disability award of $189,987.75, a sum considerably less than the damages McLain seeks to recover in his common law tort action.

**12.** *See Tharp v. Louisville & Nashville Railroad Co.*, 307 Ky. 322, 210 S.W.2d 954 (1948).

**13.** *Vestal Lumber Co. v. Clark*, Ky., 268 S.W.2d 954, 956 (1954).

1996 amendments would only affect the benefits to which McLain is entitled under the Act, which issue is not before us; and not his ability to sue his employer in tort, which issue is before us.

Thus, since there is no genuine issue as to any material fact bearing on the application of the exclusivity statute, we hold that the trial court did not err as a matter of law in dismissing McLain's common law tort action against Dana Corporation.[14]

## II. PRODUCTS LIABILITY CLAIMS

■ In his appeal from the dismissal of his claims against Bay Design and Paslin, McLain acknowledges that his complaint was filed after the applicable one-year statute of limitations. However, he claims that "he filed his amended complaint as soon as he 'discovered'" the appropriate defendants and that the "discovery rule" should be extended to situations where the plaintiff has not yet discovered the identity of the alleged tortfeasor. We conclude that McLain's argument lacks merit and hold that the discovery rule does not apply to this case.

■ Under Kentucky law, the discovery rule provides that a cause of action accrues when the injury is, or should have been, discovered.[15] However, the discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries.[16] A person who has knowledge of an injury is put on "notice to investigate" and discover, within the statutory time constraints, the identity of the tortfeasor.[17] Application of the discovery rule under circumstances as

in the case *sub judice* would defeat the very purpose of the limitations. As one court observed, "logic dictates that such an exception is capable of swallowing the rule." [18]

■ McLain's argument that we should construe KRS 355.2–318 so as to include him as a part of Dana Corporation's "family," and thereby extend to him the privity necessary to pursue a breach of warranty action against the manufacturers has already been rejected by this Court in *Halderman v. Sanderson Forklifts Co.*, Ky. App., 818 S.W.2d 270, 273 (1991). In construing a statute, the courts are "guided by the two paramount rules of statutory construction, that is, that words must be afforded their plain, commonly accepted meaning and that statutes must be construed in such a way as to carry out the intent of the legislature[.]" [19] The statute, KRS 355.2–318, extends the ability to assert a breach of warranty claim "to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty." It continues to be obvious to this Court that the Legislature did not intend to include employees of the buyer within the parameters of the statute. As our Supreme Court noted in *Williams v. Fulmer*, Ky., 695 S.W.2d 411, 414 (1985), the Legislature was aware, when enacting our version of the Uniform Commercial Code, that other alternatives to the statute existed which extended the concept of privity to allow a broader range of injured persons to assert warranty theories of recovery. As *Williams v. Fulmer, supra,* makes clear,

---

14. *Steelvest, Inc. v. Scansteel Service Center, Inc.*, Ky., 807 S.W.2d 476 (1991).

15. *Michels v. Sklavos*, Ky., 869 S.W.2d 728, 732 (1994).

16. *Resthaven Memorial Cemetery, Inc. v. Volk*, 286 Ky. 291, 150 S.W.2d 908, 912 (1941).

17. *McCollum v. Sisters of Charity of Nazareth Health Corp.*, Ky., 799 S.W.2d 15, 19 (1990).

18. *See Simmons v. South Central Skyworker's, Inc.*, 936 F.2d 268, 269 (6 th Cir.1991).

19. *Chambers v. Commonwealth*, Ky.App., 723 S.W.2d 868, 870 (1986).

"commercial sales law is statutory,"[20] and our Legislature chose to limit actions for breach of warranty as provided in KRS 355.2–318. It is not the function of the courts to extend the concept of privity to include those whom the Legislature has not seen fit to protect.

Accordingly, the summary judgment of the Hardin Circuit Court is affirmed.

ALL CONCUR.