RENDERED: MAY 7, 2021; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2020-CA-0816-MR

BOBBY GERALD HURST                                  APPELLANT


v.             APPEAL FROM WHITLEY CIRCUIT COURT
HONORABLE DANIEL BALLOU, JUDGE
ACTION NO. 14-CI-00690


DIXIE TRUSS, INC.                                      APPELLEE


OPINION
AFFIRMING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; DIXON AND MAZE, JUDGES.

DIXON, JUDGE: Bobby Gerald Hurst appeals from the order granting Dixie Truss, Inc. (Dixie) summary judgment, entered by the Whitley Circuit Court on June 8, 2020. Following a careful review of the record, briefs, and law, we affirm.

## FACTS AND PROCEDURAL BACKGROUND

Hurst was hired by Paul Matthew ("Matt") and Sandra Witt to set trusses on a building. Hurst measured the building and provided measurements to Matt. Matt then ordered the trusses from W.D. Bryant & Sons, who contacted

Dixie to manufacture the trusses. The trusses were delivered directly to the Witts' construction site a few days prior to their scheduled installation. On December 16, 2013, Hurst and his construction team engaged in unbundling and setting the trusses. Hurst and his team were setting the trusses when one suddenly and unexpectedly failed, causing Hurst to fall to the ground and injure his neck and spine. Hurst claims the failure of the truss was "in part due to the gussets failing to hold the truss boards together, causing the wood to come apart." The truss was subsequently repaired and installed in the Witts' building.

On December 15, 2014, Hurst brought the instant action against the Witts and Dixie. Hurst alleged various claims against the Witts which were later amended and then dismissed by the trial court, finding they owed no duty to Hurst. Hurst did not appeal that decision; therefore, we will not discuss further his claims against the Witts. Claims against Dixie contained in Hurst's complaint include: (1) breach of express warranty, (2) breach of implied warranty of merchantability, (3) breach of implied warranty of fitness for a particular purpose, (4) negligence per se, and (5) other amorphous claims later categorized as strict liability in tort for a manufacturing defect and res ipsa loquitur.

Throughout the litigation, significant discovery has been propounded, answered,[1] and supplemented. Multiple depositions have been scheduled, rescheduled, and/or cancelled by Hurst. A few affidavits have also been made part of the record, including those of Hurst and Matt. Hurst has, additionally but unsuccessfully, moved the trial court on multiple occasions to compel entry upon the Witts' land to inspect the truss he alleges caused his injuries. Hurst has also changed legal representation during these protracted proceedings. This matter was dismissed for lack of prosecution and subsequently reinstated. Hurst has repeatedly moved the court to set the matter for trial and to compel mediation. Dixie eventually moved the trial court for summary judgment. After the matter was fully briefed and arguments heard, the trial court granted summary judgment to Dixie on June 8, 2020. This appeal followed.

**STANDARD OF REVIEW**

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, stipulations, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR[2] 56.03. An

---

[1] Hurst states in his appellate brief that only Dixie failed to answer discovery requests, and Dixie's failure to do so resulted in his inability to move the case forward more expeditiously. This contention is refuted by Dixie and the record, as it filed notice of both its discovery responses and supplemental responses.
[2] Kentucky Rules of Civil Procedure.

appellate court's role in reviewing a summary judgment is to determine whether the trial court erred in finding no genuine issue of material fact exists and the moving party was entitled to judgment as a matter of law. *Scifres v. Kraft*, 916 S.W.2d 779, 781 (Ky. App. 1996). A grant of summary judgment is reviewed *de novo* because factual findings are not at issue. *Pinkston v. Audubon Area Cmty. Servs., Inc.*, 210 S.W.3d 188, 189 (Ky. App. 2006).

## PREMATURE SUMMARY JUDGMENT

Hurst first argues the trial court prematurely granted summary judgment. "A summary judgment is only proper after a party has been given ample opportunity to complete discovery, and then fails to offer controverting evidence." *Pendleton Bros. Vending, Inc. v. Commonwealth Fin. & Admin. Cabinet*, 758 S.W.2d 24, 29 (Ky. 1988) (citing *Hartford Ins. Grp. v. Citizens Fidelity Bank & Trust Co.*, 579 S.W.2d 628 (Ky. App. 1979)).

Hurst claims one set of discovery was still outstanding but fails to identify which set. Hurst also fails to point to any occasion where he brought this to the trial court's attention or filed a motion to compel. Hurst further claims that witnesses had been identified who needed to be deposed; yet, he fails to provide our court with the identity of any such witnesses.

Hurst had nearly five and a half years to conduct discovery from the filing of his complaint until the court granted summary judgment to Dixie; yet, he

now complains because the efforts he made to obtain discovery fail to support his claims. We will not search the record to construct Hurst's argument for him, nor will we go on a fishing expedition to find support for his underdeveloped arguments. "Even when briefs have been filed, a reviewing court will generally confine itself to errors pointed out in the briefs and will not search the record for errors." *Milby v. Mears*, 580 S.W.2d 724, 727 (Ky. App. 1979).

We further note additional formal discovery is largely irrelevant to whether Hurst has stated claims upon which relief may be granted, even though he claims his failure to conduct such precludes a grant of summary judgment. Our conclusion is supported and discussed in the treatment of Hurst's following arguments.

## RES IPSA LOQUITUR

Hurst next argues the trial court erred in declining to apply res ipsa loquitur. "As Prosser explains, res ipsa loquitur is a 'Latin phrase, which means nothing more than the thing speaks for itself,' and is simply '[o]ne type of circumstantial evidence.' *Prosser and Keeton on Torts*, Sec. 39 (5th ed. 1984)." *Perkins v. Hausladen*, 828 S.W.2d 652, 654 (Ky. 1992). Whether to apply this doctrine "is within the trial court's sound discretion." *Sadr v. Hager Beauty Sch., Inc.*, 723 S.W.2d 886, 887 (Ky. App. 1987). Even so,

> [r]eliance upon the doctrine of res ipsa loquitur is
> predicated upon a showing that (1) the defendant had full

control of the instrumentality which caused the injury; (2) the accident could not have happened if those having control had not been negligent; ***and*** (3) the plaintiff's injury resulted from the accident. [*Bowers v. Schenley Distillers, Inc.*, 469 S.W.2d 565, 568 (Ky. 1971)]. The doctrine does not apply if it is shown that the injury may have been due to some voluntary action on the plaintiff's part. *See Schmidt v. Fontaine Ferry* [*Enters.*, 319 S.W.2d 468 (Ky. 1959)].

*Id*. (emphasis added).

Here, the trusses were delivered to the Witts' property a few days prior to installation. It was at that point that the trusses left Dixie's control. The trusses remained in the Witts' control until Hurst and his team undertook to unbundle and set them. Therefore, we cannot say the subject truss was under the exclusive control of Dixie at the time of Hurst's injury. Since Hurst could not prove the first element essential to a res ipsa loquitur claim—and proof of all three elements is required—the trial court properly declined to apply the doctrine of res ipsa loquitur. *See Ryan v. Fast Lane, Inc*., 360 S.W.3d 787, 790 (Ky. App. 2012), ("As to the first element, we note that Ryan was operating the pump at the time of her injury. Therefore, we cannot say that the pump was under the exclusive control of Fast Lane. Thus, the trial court did not err in concluding that Ryan was unable to prove the first element.").

## EXPRESS AND IMPLIED WARRANTIES

Hurst next contends the trial court failed to properly analyze or address his express and implied warranty arguments. KRS[3] 355.2-318 provides:

> A seller's warranty whether express or implied extends to any natural person who is in the family or household of his buyer or who is a guest in his home if it is reasonable to expect that such person may use, consume or be affected by the goods and who is injured in person by breach of the warranty. A seller may not exclude or limit the operation of this section.

Hurst claims he was a guest[4] under this statute since Matt extended the hospitality of "occasionally" offering coffee to him while he was at the job site and, therefore, the warranties should be extended to him. However, this simple act of kindness does not transform the true nature of the relationship, which was one of

---

[3] Kentucky Revised Statutes.

[4] Black's Law Dictionary defines "guest" as:

> **guest** (13c) **1.** Someone who is entertained or to whom hospitality is extended. **2.** Someone who pays for services at an establishment, esp. a hotel or restaurant. **3.** In an automobile statute, one who accepts a ride in a motor vehicle without paying for it or conferring any other substantial benefit on the owner or operator, but accepts the ride for his or her own pleasure or business.
> - **business guest.** (1942) *Torts*. See BUSINESS VISITOR (1).
> - **social guest.** (1901) *Torts*. A guest who is invited to enter or remain on another person's property primarily for private entertainment as opposed to entertainment open to the general public. See LICENSEE (2).

*Guest*, BLACK'S LAW DICTIONARY (11th ed. 2019).

employment, into one (as guest of a buyer) that would afford him the protection intended by this statute.

Another panel of our Court has squarely addressed whether the legislature intended KRS 355.2-318 to extend to employees of a buyer. That panel observed:

> It continues to be obvious to this Court that the Legislature did not intend to include employees of the buyer within the parameters of the statute. As our Supreme Court noted in *Williams v. Fulmer*, [695 S.W.2d 411, 414 (Ky. 1985)], the Legislature was aware, when enacting our version of the Uniform Commercial Code [(UCC)], that other alternatives to the statute existed which extended the concept of privity to allow a broader range of injured persons to assert warranty theories of recovery. As *Williams v. Fulmer*, *supra*, makes clear, "commercial sales law is statutory," and our Legislature chose to limit actions for breach of warranty as provided in KRS 355.2-318. It is not the function of the courts to extend the concept of privity to include those whom the Legislature has not seen fit to protect.

*McLain v. Dana Corp.*, 16 S.W.3d 320, 326-27 (Ky. App. 1999) (footnote omitted). Accordingly, as a matter of law, KRS 355.2-318 does not apply to Hurst, who was not merely the Witts' guest but rather more properly characterized as an employee engaged in setting trusses in their building. Furthermore, Hurst himself admits lack of privity in his discovery responses when he repeatedly answered that his claims were pled in the alternative and if the trusses were in fact purchased by the Witts—a fact that is now undisputed—then his claims are unsupported.

-8-

Thus, Hurst's warranty claims fail for lack of privity as required under Kentucky's UCC, and the trial court did not err in granting summary judgment to Dixie on these claims. *See Compex Intern. Co., Ltd. v. Taylor*, 209 S.W.3d 462, 465 (Ky. 2006), *as modified on denial of reh'g* (Jan. 25, 2007) ("[A] seller's warranty protections are *only* afforded to one with whom there is privity of contract, or, to use the terms of the statute, a 'seller's' warranty protections are *only* afforded to 'his buyer.' Although the statute provides an exception to the privity requirement, that exception is limited to its clear terms and includes only those individuals who enjoy the specified relationship with the buyer.").[5]

**STRICT LIABILITY IN TORT FOR A MANUFACTURING DEFECT**

Hurst also argues the trial court failed to analyze and address his arguments regarding strict liability in tort for a manufacturing defect. He directs our court to Section 402(a) of the Restatement (Second) of the Law of Torts,[6] which states:

> **Special Liability of Seller of Product for Physical Harm to User or Consumer**
>
> (1) One who sells any product in a *defective condition unreasonably dangerous* to the user or consumer or to his

---

[5] We further note the sales contract was between Matt and W.D. Bryant & Sons, not between Matt and Dixie. We need not address that point further because Hurst has failed to establish he was the buyer or otherwise covered by the exceptions in KRS 355.2-318.

[6] This section was adopted by the high Court of Kentucky in *Dealers Transportation Company v. Battery Distribution Company*, 402 S.W.2d 441, 446-47 (Ky. 1965), *as modified on denial of reh'g* (May 13, 1966).

property is subject to liability for physical harm thereby caused to the ultimate user or consumer, or to his property, if

> (a) the seller is engaged in the business of selling such a product, and

> (b) it is expected to and does reach the user or consumer without substantial change in the condition in which it is sold.

> (2) The rule stated in Subsection (1) applies although

> (a) the seller has exercised all possible care in the preparation and sale of his product, and

> (b) the user or consumer has not bought the product from or entered into any contractual relation with the seller.

(Emphasis added.)

"The 'sole question in a products liability case,' regardless of whether the case involves failure to adequately warn, defective design, or other products liability theories, is whether the product is *defective*. *Montgomery Elevator Co. v. McCullough*, [676 S.W.2d 776, 782 (Ky. 1984)]." *Leslie v. Cincinnati Sub-Zero Prods., Inc.*, 961 S.W.2d 799, 803-04 (Ky. App. 1998) (emphasis added). "Accordingly, a plaintiff has the burden of showing an identifiable, unreasonably dangerous defect. [*See Gray v. Gen. Motors Corp.*, 133 F. Supp. 2d 530, 533 (E.D. Ky. 2001), *aff'd*, 312 F.3d 240 (6th Cir. 2002)]." *Dalton v. Animas Corp.*, 913 F. Supp. 2d 370, 373 (W.D. Ky. 2012). Furthermore, "Kentucky law is clear that

-10-

evidence that merely surmises or speculates as to a defect is not sufficient. *Midwestern V.W. Corp. v. Ringley*, 503 S.W.2d 745, 747 (Ky. 1973)." *Id.*

Here, after years of discovery and litigation, the only evidence Hurst has provided that the truss was defective is his own testimony. In addition to his pleadings, Hurst has produced an essentially single-page affidavit proffering himself as an expert witness. The substance of that affidavit asserts Hurst has been in the construction business for eighteen years and "[t]he identifiable unreasonably dangerous condition of the truss was in part the metal connecting mechanism on the truss failed, which created the dangerous situation that lead [sic] to my injury." However, this "expert" testimony fails to indicate how, why, or in what manner the metal connecting mechanism of the truss failed. Consequently, Hurst failed to meet his burden of proof, and Dixie's motion for summary judgment was properly granted. *See Gray*, 133 F. Supp. 2d 530; *Ringley*, 503 S.W.2d 745.

## NEGLIGENCE

Finally, Hurst contends the trial court erred by failing to analyze and address his negligence claims. "[T]o prevail on a negligence claim, the pleading party must prove three elements: 1) duty; 2) breach of that duty; and 3) consequent injury." *Keaton v. G.C. Williams Funeral Home, Inc.*, 436 S.W.3d 538, 542 (Ky. App. 2013). The term "consequent injury" encompasses two distinct elements— actual injury and legal causation between the breach and the injury. *Pathways, Inc.*

-11-

*v. Hammons*, 113 S.W.3d 85, 88-89 (Ky. 2003). The absence of proof on any one of the required elements is fatal to a negligence claim. *M & T Chems., Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974). In Kentucky, "in order to hold a manufacturer liable under either strict liability *or negligence*, a jury must first find that the product in question was *defective*." *Tipton v. Michelin Tire Co*., 101 F.3d 1145, 1150 (6th Cir. 1996) (emphasis added). As discussed in the preceding section, Hurst failed to meet his burden in this regard. Thus, summary judgment was properly awarded to Dixie.

## CONCLUSION

Therefore, and for the foregoing reasons, the order of the Whitley Circuit Court is AFFIRMED.

ALL CONCUR.

BRIEF FOR APPELLANT:

Jarrod Bentley
Prestonsburg, Kentucky

BRIEF FOR APPELLEE:

J. Warren Keller
Ashley P. Hoover
London, Kentucky