**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

─────────────

**No. 21-2151**

─────────────

SHAWN CURRAN,

　　　　　Plaintiff - Appellant,

v.

AXON ENTERPRISE, INC.; RICHARD NELSON,

　　　　　Defendants - Appellees.

─────────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk.  Robert G. Doumar, Senior District Judge.  (2:19-cv-00617-RGD-LRL)

─────────────

Argued:  October 27, 2022　　　　　　　　　Decided:  January 9, 2023

─────────────

Before DIAZ, THACKER, and QUATTLEBAUM, Circuit Judges.

─────────────

Affirmed in part, vacated in part, and remanded by published opinion. Judge Quattlebaum wrote the opinion, in which Judge Diaz and Judge Thacker joined.

─────────────

**ARGUED:**　Elliott Buckner, CANTOR GRANA BUCKNER BUCCI, Richmond, Virginia, for Appellant.  Pamela B. Petersen, AXON ENTERPRISE, INC., Scottsdale, Arizona; Brian Nelson Casey, CLARKE, DOLPH, HULL & BRUNICK, PLC, Virginia Beach, Virginia, for Appellees.  **ON BRIEF:**　M. Scott Bucci, Jeffrey N. Stedman, CANTOR GRANA BUCKNER BUCCI, Richmond, Virginia, for Appellant.

─────────────

QUATTLEBAUM, Circuit Judge:

While participating in a TASER[1] training session, Virginia Beach Police Department Officer Shawn Curran took a break in a designated safety area. Another participant, who was engaged in a role-playing exercise, fired his TASER. Unfortunately, he missed his intended target and hit Curran in the eye. Curran sued Richard Nelson, who oversaw the session, for negligence and Axon Enterprise, Inc., the manufacturer of TASERs and sponsor of the training program, for vicarious liability. Nelson and Axon moved separately for summary judgment and the district court granted both motions. It determined that Nelson could only be liable for the conduct of the participant who fired the TASER if what Virginia law calls a "special relationship" existed between Nelson and Curran. But it found that no such special relationship existed. And since it held that Nelson was not liable, the court also granted Axon's motion as to Curran's vicarious liability claim.

On appeal, Curran insists that he has two valid negligence claims. First, he contends that in overseeing the TASER training session, Nelson had a special relationship with him and the other trainees that obligated Nelson to use reasonable care to protect the participants during the various exercises. Second, Curran contends that, under general negligence principles, Nelson is liable for his own acts and omissions in setting up and overseeing the training session.

---

[1] For convenience, we will refer to the conducted energy weapons that Axon manufactures as TASERs throughout, as TASER® is a registered trademark of Axon.

2

We affirm the district court's decision to grant summary judgment on Curran's special relationship claim. As it noted, Virginia has not previously recognized a special relationship in the trainer and adult trainee context. And we see no reversible error in the court's interpretation of Virginia law on this issue or in its application of Rule 56 of the Federal Rules of Civil Procedure. But we agree with Curran that Virginia law permits his general negligence claim against Nelson. Thus, we vacate the order dismissing the case and remand for proceedings on Curran's general negligence claim.[2]

## I.

Axon manufactures TASERs and sponsors training sessions for their use. Some sessions train officers on the use of TASERs generally. Others, like the one here, certify officers who successfully complete the course to be trainers themselves. This training session took place at a law enforcement training academy in Virginia Beach, Virginia. It included 25 law enforcement officers. Curran was one of the participants. Curran serves as a defensive tactics coordinator, has been a certified TASER user for over 15 years and has participated in previous TASER training sessions. Nelson, a West Virginia Natural Resource Police employee, is a certified TASER instructor. Axon arranged for Nelson to lead the training session.

---

[2] Because Axon's motion for summary judgment was granted on the basis it could not be vicariously liable when Nelson did not breach a duty, we remand the vicarious liability claim to the district court as well.

3

The session included role-playing type exercises intended to simulate real life situations. One was a box drill. Nelson arranged the box area by standing up four fold-up mats vertically on a wrestling mat in the center of a gymnasium to simulate four walls and four openings at the corners.

In a box drill, a trainee armed with a TASER walks into the center of the box area. Another trainee, playing the role of a "civilian," aggressively approaches the armed trainee from behind one of the standing fold-up mats. J.A. 1545. The armed trainee must make a risk assessment that often leads to firing the TASER at the aggressive civilian. This is all supposed to happen inside the box area.

For safety, the civilian trainee wears a specialized body suit and a helmet. But participants who wear the body suits often get overheated. *Id.* So a trainee can rest and cool off on a bench in the designated recovery area. Nelson located the recovery area outside the box behind one of the four stand-up mats. In that area, trainees may remove their helmets but are expected to wear protective glasses.

Curran was one of two trainees acting as civilians during one box drill exercise. Having just finished his turn, he took a break in the recovery area. Curran removed his helmet but did not put on protective eyewear.

While Curran was resting, the box drill exercise continued. The exercise started in the box area but moved outside the stand-up mats. The armed trainee then fired at the civilian. But since the exercise moved outside the box area, the stand-up mats no longer provided a barrier for those in the recovery area. In fact, the recovery bench where Curran

4

was sitting was downrange from the armed trainee. One of the TASER prongs shot by the trainee struck Curran in the eye.

The image below may better explain the location of the box area, the two trainees actively participating in the box drill and the recovery area where Curran was resting at the time he was injured. J.A. 85.



The orange arrow (1) points to the box area. The green arrow (2) points to the armed trainee. The yellow arrow (3) points to the trainee playing the role of a civilian. The red arrow (4) points to the recovery area behind the mat where Curran was resting.

5

II.

Curran sued Nelson, asserting a claim for negligence, and Axon, asserting the company was vicariously liable for Nelson's negligence.[3] Nelson and Axon moved to dismiss Curran's claims.[4] Both motions argued that Nelson had no legal duty to protect Curran from the actions of the trainee who fired the TASER. These motions were based on the principle that, under Virginia law, one does not generally owe a duty to protect another from the actions of a third party. *Kellermann v. McDonough*, 684 S.E.2d 786, 793 (Va. 2009).

But Curran argued that Virginia law also provides an exception to that general rule when the plaintiff and the defendant have a "special relationship." J.A. 19. As he pointed out, in those circumstances, a defendant must use reasonable care to protect another from the third-party's conduct. And he insisted that Nelson, in leading the training session, had such a special relationship with Curran.

After a hearing on the motions, the district court ordered discovery on whether Nelson and Curran were in a "special relationship" for which Nelson had a duty to protect Curran from participants in the training exercise.[5] J.A. 25.

---

[3] Curran also asserted a direct negligence claim against Axon. But the district court dismissed that claim and Curran did not appeal that issue.

[4] Curran sued in Virginia state court but Axon removed the case to the Eastern District of Virginia pursuant to 28 U.S.C. §§ 1441(b) and 1446 based on diversity of citizenship under 28 U.S.C. § 1332.

[5] While not relevant to his appeal, the district court also ordered discovery on whether Nelson was an independent contractor or an employee of Axon.

Following discovery, Nelson and Axon moved for summary judgment. The district court first granted Nelson's motion. It determined that the only potentially viable theory against Nelson was to hold him liable for the conduct of a third party—here the armed trainee who fired the TASER. But in order to do that, Curran had to show that Nelson and Curran had a special relationship under Virginia law.

To determine whether such a relationship existed, the district court surveyed Virginia law. Citing *Kellermann*, it explained that "[c]lassic examples the Virginia Supreme Court has recognized 'include common carrier-passenger, business proprietor-invitee, innkeeper-guest, and employer-employee with regard to the employer's potential duty of protecting or warning an employee.'" J.A. 1550. The court noted that Virginia has never recognized a special relationship that can support a claim for negligence in the context of a trainer and adult trainee. It then reviewed Virginia state trial court decisions and decisions from other states that analyzed the special relationship issue in a related but slightly different context—that of instructors and minor or college-aged students. In that context, the district court determined that the degree of control the instructor exerts is often the critical factor. Then, it reasoned that even if a trainer and adult trainee could be in a special relationship under Virginia law, Nelson lacked both the control and superior knowledge needed to justify a special relationship. In support of this conclusion, the court noted that Curran was an adult and had been TASER certified for at least 15 years. And having granted Nelson's motion, the district court granted Axon's motion as to Curran's vicarious liability claim.

7

This appealed followed. [6]


## III.

We first address Curran's argument that the district court erred in deciding that no special relationship existed and Nelson was not obligated to protect Curran from the actions of the trainee who fired the taser.[7] Generally, under Virginia law, a person has no duty to protect another from the conduct of third persons. *Burdette v. Marks*, 421 S.E.2d 419, 420 (Va. 1992). But if a special relationship exists between the defendant and the plaintiff, the defendant must use reasonable care to protect the plaintiff against such third-party conduct.[8] *Id.*

Curran insists the district court incorrectly determined that no special relationship existed. In advancing this argument, he notes that Nelson, in setting up and running the session, possessed the training location and retained control of the TASERs used in the

---

[6] We have jurisdiction to hear this appeal under 28 U.S.C. § 1291.

[7] Since federal jurisdiction here is based on diversity of citizenship, we apply the law of the pertinent state, which is Virginia. *Horace Mann Ins. Co. v. Gen. Star Nat'l Ins. Co.*, 514 F.3d 327, 329 (4th Cir. 2008). In so doing, our task is to address the issues presented based on our interpretation of how Virginia courts would apply Virginia law. *See AGI Assocs., LLC v. City of Hickory, N.C.*, 773 F.3d 576, 579 (4th Cir. 2014) (explaining that when there is no controlling precedent from the state supreme court on a state law issue, we must predict how that court would rule).

[8] Whether a special relationship exists involves both a legal and factual determination in which factual findings will only be reversed if there is clear error while conclusions of law will be determined de novo. *Universal Furniture Int'l, Inc. v. Collezione Europa USA, Inc.*, 618 F.3d 417, 427 (4th Cir. 2010).

8

exercise. He also argues that Nelson set up, oversaw, implemented and ran the exercises during the course. Finally, he emphasizes that Nelson was present when the incident occurred and had the ultimate responsibility for the training session. According to Curran, these facts indicate that Nelson had control over the training session and possessed superior knowledge compared to the trainees. As a result, Curran argues, Nelson owed a duty to Curran and the other trainees to provide reasonable protection from the dangers posed by a trainee misfiring a TASER.

Despite these arguments, we affirm the district court's decision. The district court thoroughly analyzed decisions from Virginia involving claims of negligence based on a special relationship generally and in contexts most like the ones presented here. It then applied that law to the evidence presented in this case. We find no error in the district court's interpretation of Virginia law or in its decision granting summary judgment to Nelson on Curran's negligence claim premised on a special relationship.

## IV.

But our decision on Curran's negligence based on a special relationship claim does not end our inquiry. Curran also argues that the district court erred in determining that his only viable theory against Nelson was liability based on a special relationship. He insists that Nelson is also liable under general negligence principles based on Nelson's set up,

9

implementation and execution of the training session. On this point, we agree. We see no barrier under Virginia law to such a claim.[9]

In Virginia, as in most states, the elements necessary to support a claim of negligence are the same. "To constitute actionable negligence, a legal duty must exist, and there must be a violation of that duty with resulting damage." *Burdette*, 421 S.E.2d at 420. And focusing on duty, general negligence requires that a person exercise due care to avoid injuring others. *RGR, LLC v. Settle*, 764 S.E.2d 8, 16 (Va. 2014). This general duty extends to those within reach of the defendant's conduct. *Id.* at 17.

Under those principles, Curran asserted the following allegations:

15. At all times relevant hereto, Defendant Nelson was negligent, grossly negligent and willfully and wantonly negligent.

16. Among other things, Defendant Nelson failed to exercise reasonable care, failed to properly set up the training area, failed to have a designated safety officer present to assist with the scenario based training and ensure a safe training area, failed to properly supervise the scenario based training, failed to advise and require that participants not to discharge their Tasers in the "safe zone," failed to take any action after observing several participants exit the "hot zone" and back up into the "safe zone" and discharge their Tasers there, and failed to provide a safe recovery area for the aggressors to remove their helmets and obtain fresh air after their training episode had concluded.

J.A. 19, ¶¶ 15–16. Whether Curran can prove these allegations of course remains to be seen. But we see no reason why Virginia law prohibits a general negligence claim against the instructor who set up, implemented and executed the TASER training session. Curran alleged that Nelson set up the recovery area in close proximity to the area where TASERs

---

[9] Whether a legal duty exists is a question of law that this court reviews de novo. *Volpe v. City of Lexington*, 708 S.E.2d 824, 827 (Va. 2011).

were fired and failed to ensure that the participants firing the TASERs remained within the box drill perimeter during each iteration. These allegations fit comfortably within general negligence principles under Virginia law.

In resisting our conclusion, Nelson[10] makes three primary arguments. First, he insists that even if Curran has a viable general negligence claim, he never pled one here. In support of this position, Nelson points out that the paragraph of Curran's complaint immediately following the allegations quoted above alleges that a special relationship existed between Nelson and Curran. For that reason, Nelson argues Curran's claim is based solely on his alleged special relationship with Nelson, not general negligence. True, Curran could have been more precise in drafting the complaint. But his lack of precision is not fatal to his claim against Nelson for general negligence. Fairly read, Curran alleged that Nelson breached a duty of reasonable care to those in the training area. Thus, we find that Curran sufficiently pled a cause of action against Nelson for general negligence.

Second, Nelson argues that recognizing a general negligence claim here would conflict with the line of Virginia cases holding that one does not owe a duty to protect against the acts of third parties. We disagree. In advancing this position, Nelson appears to argue that claims for negligence based on special relationships and claims for general negligence are mutually exclusive. But we see nothing in Virginia law indicating that to be the case. *See, e.g.*, *Kellermann*, 684 S.E.2d at 788 (noting the plaintiff claimed negligence based on a special relationship in addition to a breach of numerous other duties). Thus,

---

[10] For convenience, we identify Nelson as the party advancing these arguments. But Axon joins in them so our use of Nelson includes Axon as well.

11

Curran's negligence claim based on a special relationship did not foreclose his ability to assert a general negligence claim.

Finally, Nelson argues that by failing to use protective eyewear in the recovery zone, Curran assumed the risk of any errant TASER shot. Assumption of risk, an affirmative defense, only comes into play once a plaintiff pleads a duty and breach. *See Nelson v. Great E. Resort Mgmt., Inc.*, 574 S.E.2d 277, 280 (Va. 2003). In the end, that may prove to be a winning argument. But for our purposes today, it puts the cart before the horse. The district court based its ruling on the motions for summary judgment on the lack of a legal duty Nelson owed to Curran.[11] Nelson is certainly entitled to develop his assumption of the risk defense. But it is not pertinent to our considerations of duty.[12]

V.

In sum, we affirm the district court's well-reasoned decision granting summary judgment to Nelson and Axon on Curran's special relationship claim. But for the reasons set forth above, we vacate and remand the case to the district court for further proceedings consistent with this opinion as to Curran's general negligence claim.

*AFFIRMED IN PART,*
*VACATED IN PART*
*AND REMANDED*

---

[11] Nor was assumption of risk fully briefed before the district court.

[12] Axon also argues that it cannot be held vicariously liable because Nelson is not an employee, but an independent contractor. But the district court did not rule on that issue. So while Axon may advance that argument on remand, it is not before us now.

12